514

## MURPHY et ux. v. MALLOS.
### No. 616.

Municipal Court of Appeals for the
District of Columbia.
June 11, 1948.
Rehearing Denied July 7, 1948.

Desmond F. Murphy pro se.

Jacob N. Halper, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, HOOD, Associate Judge, and BARSE, Acting Associate Judge.

CAYTON, Chief Judge.

This was a suit by a broker against the owners of real estate, to recover a commission of $675, for procuring a purchaser of said real estate, under a written contract with said owners. Trial was by jury, and resulted in verdict and judgment for plaintiff. Defendants have brought this appeal.

The first error assigned is the refusal of the trial judge to direct a verdict for defendants at the close of plaintiff's case. Though the record does not show that the motion was renewed at the close of all the evidence we shall examine appellants' contention in the light of the evidence bearing on the material issues. In their answer to the complaint defendants had asserted "that prior to and at the time of the execution of the alleged contract plaintiff represented to defendants that he could and would secure for defendants possession and occupancy of a suitable apartment prior to the time of settlement under said alleged contract; that in reliance upon said representation defendants signed said alleged contract; that notwithstanding said representation plaintiff failed and refused to obtain said apartment for defendants." A representative of plaintiff testified that after some preliminary discussions defendant Desmond F. Murphy authorized plaintiff to secure a purchaser for his home, which was done; that a contract for the sale of said home for $13,500 was signed by the defendants and the purchaser, a Mrs. Conway, plaintiff broker being also a party signatory thereto; and that no promise was made about an apartment.

Mrs. Conway testified that she was ready, able and willing to complete the purchase within the time fixed in the contract but that Mr. Murphy called her about three weeks after the signing of the contract and told her that they (he and his wife) had changed their minds about selling. Mrs. Conway also testified that Mr. Murphy did not mention anything about Mr. Mallos advising defendants that he could not and would not get an apartment for them.

Plaintiff Mallos testified as to the execution of the contract and also that Mr. Murphy told him about two weeks after the signing of the contract "that the sale was off"; that he did not promise to get defendants an apartment in which they could live before they signed the contract of sale, and that Mr. Murphy did not mention this when he told him the contract was off;

that he had received no listing from the owners for the sale of the property and that because of this the District of Columbia Real Estate Commission suspended his license for one week.

Defendant Desmond F. Murphy testified that before the contract was signed it was understood and agreed that Mr. Mallos was to obtain for the defendants a suitable apartment, and that had not Mallos promised to obtain this apartment defendants would not have signed the contract; that Mallos was asked to put in the contract a provision that the apartment was to be obtained by him for defendants but Mallos replied that it was not necessary as he was agent for several apartment houses and would be able to and would find defendants a suitable apartment. Mr. Murphy also testified that about two weeks after the contract was signed he went to Mr. Mallos' office and asked whether he had found an apartment "as promised"; that Mallos replied that he could not get an apartment for defendants and did not intend to get one; that he asked Mallos to notify the purchaser that the contract was off and told Mallos that the contract was off because he had advertised the property against specific instructions and because he had repudiated his promise to obtain a suitable apartment for defendants.

Mrs. Murphy, co-defendant in the case, testified that before the contract was signed Mallos promised to obtain for them a suitable apartment to be available before they left their home; that but for this promise they would not have signed the contract; that Mallos was asked to put into the contract his agreement to obtain an apartment but replied that it was not necessary, but that as he was agent for several apartment houses he would be able to and would find the defendants a suitable apartment.

It will be seen at once that on the question as to whether Mallos had promised to secure an apartment for defendants there was a clear issue of fact for the jury. Defendants' testimony was that the unequivocal promise was made; but the testimony for Mallos was just as positive that there was no such promise. It would therefore have been plainly erroneous for the trial judge to have taken this issue from the consideration of the jury.

Another ground on which the plaintiff's claim for commission was resisted was that plaintiff had, contrary to the owners' instructions, advertised the property for sale in a local newspaper. In support of this defense Mr. Murphy testified that he had refused to give plaintiff's office a written listing with the authority to advertise the property, and that he had instructed plaintiff's representative that under no circumstances was the property to be advertised; that it was not until after the contract had been signed that he learned from neighbors that the prospective purchaser, Mrs. Conway, had become interested in the property through a newspaper advertisement inserted by Mallos; that he was embarassed and inconvenienced by this; that on February 4th he went to Mallos' office and (at the same time that he complained about Mallos not having found an apartment for him) accused Mallos of having advertised the property contrary to his instructions; that Mallos admitted this but said it was a "blind" ad. He also testified that he had complained against Mallos to the Real Estate Commission. (There was some dispute as to just what that complaint was, but we think such dispute is of no real moment on this appeal.) The testimony of plaintiff's representative admitted that a suspension had been imposed upon her by the Real Estate Commission because she had been a party to advertising the Murphy property without having first obtained a listing and, as we have said, Mr. Mallos also admitted that he had been suspended because of the same dereliction. But the real issue on this point is as to what was said between the owners and the broker. Mr. Murphy contended that his instructions were absolute that he did not want the property advertised; he also said he did not want his neighbors, his maid, or his eight year old daughter to know anything about a proposed sale. In all of this he was corroborated by his wife. But on the essentials he was contradicted by plaintiff and plaintiff's witness. Plaintiff's representative testified that Mr. Murphy gave her permission to bring prospective purchasers into the home "but not to advertise

it by number"; and that the newspaper advertisement was a "blind" one and did not mention the number of the house. Thus this issue too was for the jury; for if the testimony for plaintiff were believed by the jury (as apparently it was), plaintiff violated no instruction and the advertisement he ran was authorized. The trial judge would have had no right to decide this issue because it was clearly one of fact.

Nevertheless this situation presents another question which we think we ought to decide, though it has not been urged upon us by appellants. It is this: Should plaintiff broker be permitted to recover his commission in view of his admission that he offered the property for sale without first having obtained a written listing? The Code 1940, § 45—1408(n) provides that a broker who does so may suffer a suspension or revocation of his license; and such a suspension was imposed in this case.

It should be noted that the preceding section, 45—1407, expressly requires that a broker suing for a commission must allege and prove that he was duly licensed. There is a great difference between the two sections. One, which covers licenses, prescribes punitive measures which may be invoked by the Real Estate Commission, and also bars a suit for commission by the broker unless he alleges and proves that he was duly licensed. The other, with which we are here concerned, sets out sixteen acts (including offering property for sale without the written consent of the owner) which shall constitute grounds for suspension or revocation of a license. The section says no more than that. It does not say that a broker who offers property for sale without the owner's written consent shall lose his right to a commission. We think we have no right to read such additional punitive provision into the section.

There is still another charge of error. Appellants complain that the trial judge was wrong in "failing to emphasize to the jury" certain contentions of theirs. But we see nothing in the circumstances of this case which required the trial judge to emphasize any particular feature of the case or any particular contentions of appellants. Carefully and clearly he instructed the jury

as to the burden of proof, as to the duty of the agent to the principals, and as to all the specific issues of fact. The charge was fair, full and accurate.

The record reveals no error and the judgment must be

Affirmed.