### SHAFFER v. BERGER et al.
### No. 1037.

Municipal Court of Appeals for the District of Columbia.

Argued May 21, 1951.

Decided June 15, 1951.

470

Benjamin B. Brown, Washington, D. C., with whom Samuel B. Brown and Nathan M. Brown, Washington, D. C., were on the brief, for appellant.

Josiah Lyman, Washington, D. C., with whom Kathryn M. Schwarz, Washington, D. C., was on the brief, for appellees.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Defendant Shaffer wished to sell his dry cleaning and tailoring business. He gave oral permission to plaintiff Berger to seek a purchaser. Berger produced an interested buyer but before any written contract of sale was executed Shaffer sold the business to another party. Berger and William E. Thrift, trading as Thriftee Brokers, and Marie Wilde, an agent for the firm, brought an action in two counts for a broker's commission and for alleged damage to business reputation. The trial court dismissed Marie Wilde as a party plaintiff and directed a verdict for defendant on the count alleging damage to business reputation. A jury returned a verdict in favor of the remaining plaintiffs for a $500 broker's commission. It is from a judgment on this finding that defendant appeals. He does not question the amount of the verdict.

Construing the evidence most favorably for the plaintiffs, as we must in the light of the jury's verdict, it appears that Berger, a licensed business chance and real estate broker, solicited the defendant for a 30-day exclusive listing for the sale of the business in December 1947. Defendant refused to sign the listing card but told

Berger to go ahead and find a buyer. A net price of $6,000 was agreed upon. Several persons were shown the property by the plaintiffs and in early March 1948, in response to an advertisement placed by the plaintiffs, Otto Weil and his wife were introduced to the defendant. They appeared interested in buying and upon the advice of an expert who appraised the business they offered defendant $5,000. A sales contract was prepared by the broker and signed by the buyer, who also gave a $500 check as deposit. This contract and check were shown defendant who said he must consult his attorney but added, "This is a deal as I would like to see these people get this place." After defendant and his wife had looked over the contract defendant said, "It is a deal" and he "was perfectly satisfied with the deal" and that he agreed on the $5,000 price subject to a $500 commission. Defendant asked that the signing of the contract be postponed a week until March 15 as his daughter was getting married. None of this testimony was denied. A copy of the contract was left with the defendant and arrangements were made to meet in the office of the plaintiffs on March 15.

Two days later, on March 8, 1948, defendant signed a written sales contract for the sale of the business to another party for the same price of $5,000. No broker or commission was involved in this sale. It appears that in the same week that the defendant was negotiating with the Weils he had also shown the property to the ultimate purchaser. On March 15, 1948, defendant failed to meet the Weils at plaintiffs' office, and it was then that the plaintiffs learned that the business had been sold. Plaintiff Berger returned the check for $500 to the Weils and subsequently made demand on the defendant for a $500 broker's commission.

 It is contended that the plaintiffs could not recover a commission because they did not first obtain a written listing from defendant to sell the property. Code 1940, § 45–1408, provides that the license of a real estate or business chance broker or salesman may be revoked or suspended for various acts. Included in such acts under subdivision (n) is the provision that he "placed a sign on any property offering it for sale or for rent or offering it for sale or rent without the written consent of the owner or his authorized agent". Assuming, without deciding, that this subsection includes the sale of a business (although it may be open to the construction that it applies only to the sale or rent of real property) we nevertheless do not believe it should be interpreted to nullify a broker's contract for a commission. We so decided in Murphy v. Mallos, D.C.Mun.App., 59 A. 2d 514. In that case the buyer and seller actually signed a contract, including a provision for a commission to the broker. But, aside from the statute just referred to, there is no requirement that a contract for a broker's commission be in writing.[1] Moreover, as we pointed out in Murphy v. Mallos, supra, the preceding section, 45–1407, expressly requires that a broker suing for a commission must allege and prove that he was duly licensed. No such bar is included in 45–1408. As we also said in the Murphy case, we think we have no right to read an additional punitive provision into 45–1408. It is argued that to allow a commission when the authority to sell is not in writing would be against public policy, but the public policy declared by the statute is that the broker's license *may* be suspended or revoked if he violates the statute, not that the broker shall be deprived of his commission. We do not believe we are authorized to extend the act beyond its plain provisions. Moreover, we believe that, having agreed to the sale and to the commission, defendant is estopped from denying his obligation. The law requires fair dealing on the part of brokers, but here there was no evidence of sharp practice by the broker. Those employing brokers must also deal fairly and live up to their contracts.

 It is contended next that the contract proffered by the Weils contained terms different from those originally prescribed by the defendant. The original

---

1. Campbell v. Rawlings, 52 App.D.C. 37, 280 F. 1011.

terms apparently were that the net price for the business would be $6,000 and that either "cash or terms" would be acceptable payment.[2] The sales contract signed by Mrs. Weil provided for a purchase price of $5,000 and contained additional and more specific terms and conditions. Defendant examined this contract and expressed his satisfaction with it. Under these circumstances it is not for him to argue as an afterthought that the terms materially deviated from those that he originally prescribed.

The trial court instructed the jury that in order to return a verdict for the plaintiffs they must find that the plaintiffs proved by a preponderance of the evidence that they had in pursuance to an agreement with the defendant produced a purchaser who was ready, willing, and able to buy the business on the defendant's terms and conditions and that defendant agreed to sell the business to them.[3] This instruction was repeated several times in different words. The court denied defendant's request that he give a definition of "able" as meaning financially able. Defendant assigns this as error.

While it is true that in the ordinary suit to recover a commission the broker must establish the financial ability of the purchaser,[4] yet where the seller accepts the purchaser and his offer and then prevents the consummation of the sale by his own default the burden is upon him, in order to defeat the broker's right to compensation, to show the purchaser's want of ability.[5] We think, therefore, that the charge was more than adequate. The meaning of "able", used in such a connection, seems perfectly clear and open to only one construction. To have defined it further would have been surplusage.

Plaintiffs introduced proof of the oral agreement with defendant to find a purchaser and of defendant's acceptance of the purchaser. The case was submitted to the jury on these issues. We find no reversible error.

Affirmed.

2. Defendant refused to sign the listing card calling for a 30-day exclusive listing. It is not apparent how long a period the parties intended that the plaintiffs would be authorized to seek a purchaser, but it is clear that from December 1947, when Berger first contacted defendant, until March 1948 defendant received all prospects which the plaintiffs brought to the premises.

3. Sorivi v. Baldi, D.C.Mun.App., 48 A.2d 462; Tweed v. Buckner, D.C.Mun.App., 39 A.2d 203.

4. Long v. Murchison, D.C.Mun.App., 62 A.2d 370.

5. Dotson v. Milliken, 27 App.D.C. 500, affirmed 209 U.S. 237, 28 S.Ct. 489, 52 L.Ed. 768; Heyward v. Kirsch, D.C. Mun.App., 77 A.2d 551; Stokes v. Wolf, 137 Md. 393, 112 A. 566.