**Ruth C. MILLER, Appellant,**

v.

**PEOPLES CONTRACTORS, LTD., Appellee,**
**A Corporation.**

**No. 4630.**

District of Columbia Court of Appeals.

Argued June 24, 1969.

Decided Oct. 15, 1969.

John Louis Smith, Jr., with whom Thomas A. Farrell, Washington, D. C., was on the brief, for appellant.

Jacob Gordon, Washington, D. C., for appellee.

Before FICKLING, KERN and NEBEKER, Associate Judges.

KERN, Associate Judge.

Appellee, a contractor, sued appellant, a homeowner in the District of Columbia, to recover for work done on her house under an agreement they had executed on May 11, 1966. The trial court held the agreement valid and enforceable and rendered judgment for appellee in the amount of $780. Appellant contends that the agreement is illegal and unenforceable because it violated the *Regulations Governing the Conduct of the Home Improvement Business in the District of Columbia* (the Regulations) issued by the Commissioners in Order No. 61–863 pursuant to D.C. Code 1967, §§ 47–2344 and 47–2345.

Appellee's president had sought from the Commissioners and been denied a license to conduct a home improvements business in the District of Columbia. Thereafter, he and appellant executed two agreements, dated May 8th and May 11th, respectively. Under the first, his company was to paint the exterior of appellant's house and install aluminum sidings and shutters and, under the second, it was to scrape, paint and plaster interior walls in her house. On May 12th, four days after the parties had executed the first agreement, appellee's president accepted $3,000 from appellant in full payment of *that* agreement. His men had not completed the work thereunder. Sometime later, she refused to pay the amount due under the *second* agreement, although appellee had performed a part of the work it required, on the ground that appellee's materials and workmanship were inferior. Appellee brought this action to recover under the second agreement and appellant counterclaimed for return of the $3,000 she had paid him under the first agreement.

Section 2 of the Regulations *prohibits* "any payment" to an *unlicensed* contractor

under a "home improvement contract in advance of the full completion of all of the work required to be performed by *such contract*". (Emphasis supplied.) The Regulations define the term "home improvement contract" as "an agreement for the performance of home improvement work for a contract price of $300 or more" *including* "the second or any subsequent agreements entered into between the same contractor and the same homeowner within any twelve month period". The Regulations define "home improvement work" as "the improvement, repair, restoration, alteration * * * of any residential property". Appellee violated the Regulations because it had no license to do home improvement work in the District of Columbia yet nevertheless it accepted $3,000 from appellant before it finished the work it was to do under its agreement of May 8th with appellant. *See* Hoffheins v. Heslop, D.C.App., 210 A.2d 841 (1965).

Appellee urges that since there were two agreements executed, its violation of the Regulations by accepting payment in full of the May 8th agreement before completion has no bearing on its enforcement of the May 11th agreement. We disagree. The Regulations expressly define a "home improvement contract" to encompass all agreements between the parties provided they were executed within a twelve month period. Appellee and appellant made their two agreements within three days of each other and these agreements related to the same house. Since the Regulations forbid acceptance of payment prior to "full completion" of "such contract" and the May 8th agreement was a part of "such contract", appellee cannot avoid the reach of the Regulations when it now seeks to enforce the May 11th part of "such contract".

Appellee next argues that appellant prevented it from completing the work under the May 8th agreement so that she cannot now be heard to complain about its acceptance of the $3,000. Although there was testimony that appellant refused to permit appellee to continue its work at her house these difficulties arose out of the May 11th agreement and did not occur until *after* appellee had accepted full payment from appellant of the May 8th agreement.

Appellee argues that not all contracts in violation of statutes or regulations are unenforceable. It cites Murphy v. Mallos, D.C.Mun.App., 59 A.2d 514 (1948), in which we held that a real estate broker might recover his commission from a sale although it was made without the owner's written consent in violation of the Code. However, we pointed out in that opinion that a broker who is *without a license may not recover his commission*. We merely declined to extend such a punitive measure to a broker who procures a buyer without a listing from the seller. "[T]he general rule is that an illegal contract, made in violation of the statutory prohibition designed for police or regulatory purposes, is void and confers no right upon the wrongdoer." Hartman v. Lubar, 77 U.S.App.D.C. 95, 96, 133 F.2d 44, 45 (1942).

In the instant case, the Commissioners issued the Regulations to protect the public by prohibiting any *unlicensed* contractor from accepting payment before he completes the home improvements work he contracts to do. The Regulations require a contractor, in order to obtain a license, to prove trustworthiness to the licensing authority [Section 3(a) and (b)], deposit a security bond with such authority [Section 5(a)], obtain public liability and property damage insurance [Section 6], appoint the licensing authority as its agent for purposes of accepting service [Section 7], use appropriate identification cards in soliciting business [Section 11(a)] and reduce to writing on a *prescribed contract form* all agreements in their entirety entered into by and between a contractor and a homeowner [Section 13 and 14]. Penalties of up to $300 and imprisonment for as much as 90 days for violations thereof are provided.

The Regulations were stated to be and clearly were for the protection of the public. To permit appellee, who had applied for and been denied a license, to collect payment before completing work he contracted to do in direct contravention of the Regulations would render nugatory the steps taken by the Commissioners to protect the public interest. We conclude that the Regulations " 'imply a prohibition' so as 'to render the prohibited act void' ", Brown v. Southall Realty Company, D.C. App., 237 A.2d 834, 837 (1968), and that the home improvements contract consisting of the May 8th and 11th written agreements between appellant and appellee must be declared void and unenforceable.

Appellee asserts that as a matter of equity it should not be denied payment since it had performed all the work it could under the May 11th agreement in the face of appellant's interference with its efforts. The trial court made no findings of fact. Our review of the record reveals that the testimony is confused as to what work appellee did, whether what it did do was satisfactory to appellant, and whether what it did not do was the result of appellant's interference or in retaliation for appellant's complaints about the quality of its work. The two agreements are as difficult to decipher as the testimony. They are written in pencil and require some work by appellee that was not even mentioned by the parties at trial. Also, we note that the digit "3" in the figure $3,000 of the May 8th agreement has been superimposed in ink over what was pencilled "2". There was no explanation at trial for this change. There was testimony that appellee's president changed the May 11th agreement some days after it was executed to include additional work and that there was handwriting of some unknown person on the agreement. We need not further untangle the issue whether there was substantial performance by appellee since we hold that appellee violated the Regulations which were designed for police or regulatory purposes. There-

fore, it cannot sue in quasi-contract for the value of its services. Kirschner v. Klavik, D.C.Mun.App., 186 A.2d 227, 229 (1962). Accordingly, the trial court should have dismissed appellee's suit and entered judgment for appellant.

Appellant argues that the trial court erred in entering judgment for appellee on her counterclaim to recover the $3,000 she paid immediately after contracting with appellee. In Rubin v. Douglas, D.C.Mun.App., 59 A. 2d 690 (1948), we permitted one who had paid another for arthritis treatments to recover her payments because the payee was *not licensed* under the Healing Arts Practice Act. We said (at 691):

> [I]t is apparent that the law was passed for the protection of the public, including plaintiff, and that the purposes of the Act will not be effectuated by permitting defendant to retain that which he ought not to have received. The public interests, in our opinion, are best served by requiring defendant to pay back the fruits of his illegal agreement. (Footnote omitted.)

To permit appellee to keep the $3,000 which it ought not to have received under the facts and circumstances peculiar to this case will neither effectuate the purpose of the Regulations nor serve the public interest. The Commissioners enacted the Regulations to prevent, among others, those who do home improvement business without a license from exacting payment without performing since they have not provided satisfactory evidence of their reliability. Here, as in Rubin v. Douglas, *supra*, "[t]he public interests * * * are best served by requiring defendant to pay back the fruits of his illegal agreement." We conclude that the trial court should have found in favor of appellant on her counterclaim in the amount of $3,000.

Reversed and remanded with directions to enter judgment in favor of appellant on appellee's action and appellant's counterclaim.