Ann BILLES, Appellant,

v.

Carl D. BAILEY, Jr., Appellee.

No. 88–311.

District of Columbia Court of Appeals.

Submitted Feb. 22, 1989.
Decided March 15, 1989.

David A. Wanger, with whom Richard D. Carter was on the brief, for appellant.

Carl D. Bailey, Jr., pro se.

Before MACK and TERRY, Associate Judges, and KERN, Senior Judge.

MACK, Associate Judge:

Ann Billes appeals from a judgment in favor of Carl D. Bailey, Jr., an unlicensed home improvement contractor, in his claim for an unpaid contract balance of $700, and denying her counterclaim for $2281 in advance payments that she alleges he wrongfully accepted. We reverse the judgment of the trial court as to appellee's claim and affirm the judgment on the counterclaim.

I

Appellant, herself a former licensed home improvement contractor, briefly employed appellee as her apprentice. Later, she allowed her license to lapse. In June and July 1987, she entered three written and signed agreements with appellee and his father requiring them to do interior and exterior painting and construct a masonry wall for her private home.[1] Before work

1. Only two written agreements, dated June 29, 1987 (for masonry) and July 21, 1987 (for interi-

or painting) were introduced into evidence and are part of the record. Appellee has indicated

began, she paid appellee and his father $625 for the painting and $450 for the masonry work. On August 14, after a substantial part of the interior and exterior painting had been done, the parties disagreed about whether, under the exterior painting agreement, appellee was required to paint a certain side of the house. They thereupon agreed orally that appellee's painting services would be terminated, and appellant made further payments of $1000. On August 28, she paid an additional $206 for painting already done, but alleges that appellee physically coerced her to do so.

On September 5, appellee and his father spent eight hours working on the masonry wall. They were about to mix and pour the concrete when appellant, who had been watching them work, terminated their services and demanded that they leave the premises. They complied without incident. Appellant testified that she was afraid of appellee and his father, and had made attempts throughout the day to contact a police detective, but failing to reach him, finally ordered appellee and his father off the premises.

Appellee sued for a balance of $700 due on the masonry contract, and appellant counterclaimed for $2402 (later orally amended to $2281) representing all payments made to appellee for improvements to her home. She contended that under 16 DCMR § 899.1 (1987), all agreements between a homeowner and a home improvement contractor within a twelve-month period aggregating three hundred dollars ($300) or more comprise a single home improvement contract, and since appellee was unlicensed to engage in the home improvement repair business, the various home improvement agreements, comprising one entire contract, were void. *Truitt v. Miller,* 407 A.2d 1073, 1078 (D.C.1979); *Miller v. Peoples Contractors, Ltd.,* 257 A.2d 476, 478 (D.C.1969). Accordingly, appellee had no legal claim to either the unpaid balance or the sums already paid. *Truitt, supra,* 407 A.2d at 1079; *Peoples Contractors,*

*supra,* 257 A.2d at 478. She argues that it is illegal for an unlicensed home improvement contractor to accept payment for partly completed work.

The trial court found that appellee was an unlicensed home improvement contractor and had accepted payments prior to the completion of the work. However, it held that the agreement to terminate the services for painting constituted a compromise and settlement, entitling appellee to retain all payments received because the work had been completed. It also held that appellant's termination of the masonry work was neither justified nor in good faith, and thus appellee was entitled to reasonable payment for all masonry work done.

II

16 DCMR § 899.1 (1987) provides that a home improvement contract is "an agreement for the performance of home improvement work for a contract price of three hundred dollars ($300) or more," including "the second or subsequent agreements entered into between the same contractor and the same homeowner within any twelve (12) month period, if the total of the contract prices of all the agreements aggregate three hundred dollars ($300) or more." 16 DCMR § 800.1 (1987) provides, "No person shall require or accept any payment for a home improvement contract in advance of the full completion of all work required to be performed under the contract, unless that person is licensed as a home improvement contractor or as a licensed salesperson employed by a licensed contractor in accordance with the provisions of this chapter."

The trial court made a factual finding that appellee was an unlicensed home improvement contractor. In this court, appellant, relying on section 899.1, renews her contention that the various agreements between the parties, all within a period substantially less than twelve months, comprised a single contract, and that appellee's

in his brief that the exterior painting agreement was also written and signed, and is in his possession. Although this writing is not part of the record on appeal, because its reduction to writing is irrelevant to our decision and its actual existence is undisputed, we will not quibble over whether the writing exists.

acceptance of payment before the last work under the contract, the masonry wall, was complete, violated section 800.1. Thus, she again argues, the contract was void and unenforceable because it would render nugatory an implied regulatory intent to protect the public interest. *Miller v. Peoples Contractors, Ltd., supra,* 257 A.2d at 478.

■ Nevertheless, we agree with the trial court that the August 14 agreement between the parties effected a compromise and settlement of the agreements for interior and exterior painting. While section 899.1 effectively merges all agreements made during a twelve month period into a single contract, there is no evidence that it can bar or defeat an affirmative act of the parties, such as a compromise and settlement, that severs some terms of the contract from the remainder. Moreover, precisely because it was drafted and intended to compromise three separate agreements, the instant contract meets the traditional tests of severability: "performance by each party is divided into two or more parts," here contained in separate writings, and "performance of each part by one party is the agreed exchange for a corresponding part by the other party." 6 WILLISTON ON CONTRACTS § 860 (3d ed. 1962 & 1988 Supp.). Thus, appellant agreed to pay appellee specific sums for each of the three tasks called for, respectively, in the three writings.

■ The compromise and settlement therefore severed the two agreements to paint from the agreement to construct the masonry wall, substituted a complete contract for the executory agreements regarding the painting already done and the compensation to be paid for it, and left the remaining masonry agreement as a separate executory contract. Of course, a valid compromise of a claim does not require that the underlying claim be valid, since release of a claim, whether or not meritorious, is sufficient consideration under a compromise and settlement. *Rommel v. West American Insurance Co.,* 158 A.2d 683, 685 (D.C.1960). Moreover, the fact that a compromise is oral does not mitigate its effectiveness when a party acts in re-

liance upon it. *Brown v. Brown,* 343 A.2d 59, 61–62 (D.C.1975). Significantly, the contract thereby substituted for the preexisting executory agreements (relating to the interior and exterior painting) was complete, and thus any advance payments received under the executory agreements were ratified by the compromise and settlement, and became legally valid under section 800.1.

### III

■ We are unable, however, to affirm the trial court's ruling in favor of appellee in his claim for the unpaid balance of $700 on the executory contract to construct the masonry wall.

It cannot be disputed that this agreement was still executory at the time appellant terminated appellee's services. Moreover, as discussed *ante,* executory home improvement contracts may not be enforced by unlicensed home improvement contractors. *Miller v. Peoples Contractors, Ltd., supra,* 257 A.2d at 478. Indeed, the executory agreement to construct the masonry wall was void. *Id.*

■ Moreover, as we held in *Truitt v. Miller, supra,* 407 A.2d at 1079–80, the doctrines of *in pari delicto* and unclean hands do not entitle an unlicensed home improvement contractor to recover in a suit for an unpaid balance under a contract that is void under section 800.1. Naturally, we are aware that appellant, herself a former home improvement contractor, was no doubt familiar with the licensing rules, and might take advantage of appellee's vulnerable position as an unlicensed contractor. Nevertheless, we must pay deference to the legislature's intentional exposure of unlicensed contractors, which discourages unlicensed work and thereby protects the consumer. Where the regulation was enacted to protect the consumer, its purpose is better effectuated in this instance by denying relief to the home improvement contractor. *Id.* at 1079; *William J. Davis, Inc. v. Slade,* 271 A.2d 412, 416 (D.C.1970). Moreover, since appellee seeks money damages, the equitable principle of unclean hands is

unavailable as a defense to the counterclaim. *Truitt, supra*, 407 A.2d at 1080.

The trial court's judgment as to appellee's claim is reversed, and its judgment as to appellant's counterclaim is affirmed.

REVERSED IN PART, AFFIRMED IN PART.