THE STEPHEN A. GOLDBERG CO., and Stephen A. Goldberg, Appellees,

v.

REMSEN PARTNERS, LTD., Appellant.

No. 98–7022.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 19, 1999.

Decided March 26, 1999.

George R. Clark argued the cause and filed the briefs for appellant.

Paul A. Kaplan argued the cause for appellees. With him on the brief was James W. Gladstone.

Before: EDWARDS, Chief Judge, WILLIAMS, Circuit Judge and BUCKLEY, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Pursuant to a 1992 Letter Agreement, the Stephen A. Goldberg Company ("the Goldberg Company" or the "Company") retained Remsen, a New York-based financial consulting services corporation, to serve as a financial advisor to the Company. The goal was to arrange a $122 million "securitized" refinancing of various Maryland and Virginia apartment complexes managed by the Goldberg Company and owned by limited partnerships controlled by Stephen Goldberg. According to the record securitized financing is a method of raising money by creating marketable securities from an

income-producing asset. See also Steven L. Schwarcz, *The Alchemy of Asset Securitization*, 1 Stan. J.L. Bus. & Fin. 133, 133 n.1 (1994). Here the parties used a mortgage loan as the asset, transferred the loan to a trust fund, and then sold ownership interests in the trust fund to investors. In consideration for Remsen's services, the Goldberg Company agreed to pay Remsen a one-percent contingent fee on completion of the financing, as well as various post-closing consulting fees.

The financing was successfully completed in January of 1993. The Goldberg Company made the agreed payments until sometime in 1994. It then stopped making payments on the balance of the post-closing fees, although it continued to make them on the closing fees and on the first-year consulting fees until January 1997.

In November 1996 the Goldberg Company filed this complaint against Remsen in the Superior Court of the District of Columbia, seeking a declaratory judgment that the parties' agreement was void and unenforceable because Remsen was not licensed as a real estate broker, as required by the District of Columbia Real Estate Licensure Act of 1982, D.C.Code §§ 45–1921, et seq. (the "Brokerage Act"). The Goldberg Company also sought damages and rescission of the parties' agreement for alleged fraud and misrepresentation. Remsen removed the case to the United States district court on the basis of diversity. It also filed a counterclaim against the Goldberg Company and a third party complaint against Stephen Goldberg, alleging breach of contract by both of them. The district court granted summary judgment for the Goldberg Company, holding that the agreement was unenforceable and void because the Brokerage Act was applicable to the transaction. Since the district court held that the Letter Agreement was void and unenforceable, it did not reach the merits of Remsen's counterclaim. The district court also, entirely on the basis of the Brokerage Act violation, ordered Remsen to return all the money that the Company had paid under the Letter Agreement ($1,078,045).

We affirm the district court's holding that the agreement was not enforceable. On the issue of recovery, we find ourselves in enough doubt about the course of District of Columbia law that we certify the question to its Court of Appeals.

\*　　\*　　\*

The Brokerage Act imposes a licensing requirement on those engaging in real estate brokerage activities. D.C.Code § 45–1926(a). Individuals conducting real estate brokerage services without licenses may not "bring or maintain any action in the courts of the District for the collection of compensation" for any such services. *Id.* § 45–1926(c). At the time of this transaction Remsen was not licensed as a real estate broker under the Act, and the Goldberg Company contends that this renders the Letter Agreement void and unenforceable.

■ Remsen's first argument on appeal is that as applied in this case the Brokerage Act violates the commerce clause. But since Remsen never argued that question before the district court, we decline to hear it for the first time on appeal. See *Boehner v. Anderson*, 30 F.3d 156, 162 (D.C.Cir.1994). Remsen also contends that New York rather than D.C. law governs the enforcement of the agreement, and that under New York law Remsen was not required to be licensed as a real estate broker to perform the services required by the Agreement. Finally, Remsen insists that even if we find D.C. law applies to this transaction, its services should not be construed as "brokerage" services under that law.

In resolving the conflict of laws issue the district court found that Remsen's activities were illegal under both New York and D.C. law, so that there was a "false conflict." Thus it applied D.C. law. Remsen contests the "false conflict" analysis. New York real estate licensure law, Remsen contends, does not cover the kind of services rendered by Remsen. We do not decide the issue, since we hold that even if the conflict is not false, D.C. law would apply.

■ In a diversity case a federal court follows the choice-of-law rules of the jurisdiction in which it sits. *Gray v. Grain Dealers Mutual Ins. Co.*, 871 F.2d 1128, 1129 (D.C.Cir.1989). The District states that (in

the absence of an effective choice of law by the parties[1]) it uses "a constructive blending" of the "governmental interest analysis" and the "most significant relationship test," the latter as expressed in the Restatement (Second) of Conflict of Laws § 188 (1988). *Hercules & Co., Ltd. v. Shama Restaurant Corp.,* 566 A.2d 31, 41 n. 18 (D.C.1989); see also *Ideal Electronic Security Co. v. Int'l Fidelity Ins. Co.,* 129 F.3d 143, 148 (D.C.Cir.1997) (stating that District applies § 188 for contracts cases). But the Restatement itself notes that for certain types of contracts, including those for services (as here), "it is considered possible to state with respect to each that ... a particular contact plays an especially important role." Restatement, Ch. 8, Topic 1, Title B, "Introductory Note." There does not appear to be an established hierarchy in the application of these concepts. See Kermit Roosevelt III, "The Myth of Choice of Law: Rethinking Conflicts," 98 Mich. L.Rev. ____, ____ (1999) (noting "dizzying number of factors" made relevant by Restatement with little hint as to their relative weight). In any event, for the reasons developed below we find the results somewhat inconclusive by all methods, and ultimately follow a method the District has used to break a tie between its own law and that of another jurisdiction—namely the efficiency of using its own.

For the validity of a service contract, the Restatement assigns presumptive weight to the place where the services are to be rendered, see Restatement § 196, reasoning that this is most likely both to accord with the assumptions of the parties and to allow control by the state with the greatest interest. But this factor does not point with certainty. Several Remsen employees spent weeks in the District gathering data and dealing with other professionals working on the transaction, but Remsen also reviewed and analyzed the data in New York.

The five factors named in § 188 as determinants of a "significant relationship" are: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the contract's subject matter;

and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id.* § 188. Place of performance (#3) we have already discussed.

The other factors—taken without any prioritization—do little to help. One, the place of negotiation (#2), points to the District. The subject matter of the contract (#4), real property in Virginia and Maryland, points to neither New York nor the District, and neither party is urging the application of the laws of Virginia or Maryland. The place of contracting (#1) is uncertain. It is undisputed that Goldberg signed the agreement in the District, while Remsen signed it in New York. But the parties disagree as to where the last signature—the last act necessary to make the agreement binding—occurred. In any event, under the Restatement the place of contracting standing alone is typically viewed as rather insignificant, especially when it was fortuitous. *Id.* § 188, cmt. e; *Finance America Corp. v. Moyler,* 494 A.2d 926, 929 (D.C.1985). And the parties' places of business are divided: while the Goldberg Company is a District corporation and Mr. Goldberg maintains his office in the District, Remsen is a Delaware corporation with offices in New York but operating around the country.

In § 188, the Restatement itself states that where place of negotiation and performance coincide, that place should generally control, § 188(3), noting in the comment that the state with those contacts "will usually be the state that has the greatest interest in the determination of issues arising under the contract." *Id.* cmt. f. As we've said, the place of negotiation points to the District, and the place of performance is equivocal. The District, however, inquires independently into which jurisdiction has the greatest interest in the subject. See, e.g., *District of Columbia Insurance Guaranty Association v. Blair,* 565 A.2d 564, 568 (D.C.App.1989); *Hercules & Co.,* 566 A.2d at 41 n. 18; *Kaiser–Georgetown Community Health Plan, Inc. v. Stutsman,* 491 A.2d 502, 509 (D.C.App.1985); *Fowler v. A & A Co.,* 262 A.2d 344, 348 (D.C.1970). Here, the purpose

---

1. Remsen invokes a later loan agreement with a choice of law clause, but of course this does not

govern the earlier Letter Agreement in dispute here.

of the brokerage statutes in both New York and the District is to protect those who enter into agreement with unlicensed real estate brokers. See *Galbreath-Ruffin Corp. v. 40th & 3rd Corp.*, 19 N.Y.2d 354, 362–63, 280 N.Y.S.2d 126, 227 N.E.2d 30 (1967); D.C.Code § 45–1921. We have assumed that District law (if applicable) covers this transaction and New York law (if applicable) does not; if true, this presumably reflects a judgment by the District that interests in such protection outweigh the various costs (administration, denial of recovery for services as to which protection was completely unnecessary, etc.), and a New York judgment that the balance falls the other way. It is not apparent how New York's hypothesized preference for non-regulation is any less frustrated by subjecting this transaction (with its activities divided roughly equally between the District and New York) to District law than the District's interest in protection is thwarted by application of New York law.[2] Given this standoff, we think that the District would most probably apply its own rule. See *Kaiser–Georgetown*, 491 A.2d at 509 n. 10 (observing that when the interests of both jurisdictions are equally weighty, efficiency concerns tilt the balance in favor of applying the law of the forum state, presumably because the forum courts have more experience with their own law).

Under the assumption that District law applies, Remsen first argues that its services here are not the services of a real estate broker under the District's Brokerage Act, stressing especially the securitization aspect of the transaction. The statute includes among real estate brokers anyone who "negotiates a loan secured by a mortgage, deed of trust, or other encumbrance on real property." D.C.Code § 45–1926(b)(1)(B). Because the refinancing funds ultimately came from the buyers of the securities (interests in the trust holding the mortgage), Remsen says this is inapplicable. But that fact does little to undermine the proposition that a mortgage was indisputably a component of the transaction. Remsen has made no claim that the services can be disaggregated in some way that would allow it to recover for services that are truly distinct from brokering the mortgage, so we need not address that possibility.

Remsen also argues that it was only an "advisor." The trouble is that Remsen's activities look very much like those of a broker. It introduced the Goldberg Company to the investment bank that ultimately provided the funds for the refinancing of the properties, participated actively in the negotiations between the investment bank and the Goldberg Company over the terms of the transaction, and received payment for its services based on the amount of the loan. All of these efforts culminated in a loan to the Goldberg Company that was secured by a mortgage on its apartment properties. In all this the case is quite similar to *RDP Development Corp. v. Schwartz*, 657 A.2d 301, 305–07 (D.C.1995), where, despite a party's identification of its role as that of "consultant," the court found that its participation in negotiations for lease of property and receipt of a commission based on the lease's value were the services of a real estate broker under the statute.

Remsen's final statutory theory is that one who negotiates a mortgage can be included in the Act's definition of a real estate broker only if the transaction included a transfer of real estate (apart from such as might be thought to inhere in creation of the mortgage itself). Although the D.C. statute is indeed confusing, its structure precludes Remsen's argument. The licensure provision itself contains a definition of who is a real estate broker:

> For the purposes of this chapter, a person will be performing as a real estate broker if:
>
> (A) The person accepts a fee, commission, or other valuable consideration for

---

**2.** The above analysis makes the assumption that legislation is intended to advance the public interest. On the more somber public choice view of the world, the phrasing is different: the two jurisdictions' differing outcomes would be ascribed to differences in the political power brought to bear by the prospective winners and losers under the alternative rules. The ultimate conclusion would in essence be the same—that either choice will cause roughly equivalent frustration of one or the other of the two polities.

exchanging, buying, selling, renting, or leasing real estate or businesses;

(B) The person negotiates a loan secured by a mortgage, deed of trust, or other encumbrance on real property or a business; or

(C) The person is engaged in any activity specified by § 45-1922(12).

D.C.Code § 45-1926(b)(1). Remsen rests its case on one of the provisions cross-referenced in subsection (C) above:

(12) The term "real estate broker" means any person, firm, association, partnership . . . which:

(A) For a fee, commission, or other valuable consideration, lists for sale, or sells, exchanges, purchases, rents, or leases real property. A real estate broker may collect or offer to collect rent or income for the use of real estate, or negotiate a loan secured by a mortgage, deed of trust, or other encumbrance *upon the transfer of real estate.*

*Id.* § 45-1922(12) (emphasis added). The emphasized language of this subsection presumably could not include a mortgage unaccompanied by a real estate transfer (apart from creation of the mortgage).

But § 45-1922(12) is just one of three clauses defining the coverage of § 45-1926(b). And § 45-1926(b)(1)(B), which covers those who negotiate a loan secured by a mortgage, conspicuously lacks the qualifying language. Thus the statute covers Remsen's activities.

■ There remains the issue of the remedy. The statute itself bars "any action in the courts of the District for the collection of compensation for any services performed in that [real estate broker] capacity." D.C.Code § 45-1926(c). So Remsen cannot recover unpaid portions of its fee. But the district court also ordered Remsen to pay back to the Goldberg Company the portion of the fee already collected.

But we are most uncertain whether the District would allow recovery of fees already paid to Remsen, in the absence of evidence that Goldberg in any way failed to receive the services contracted for, or some other lack of equity. It is true that District courts have often allowed restitution for money paid to unlicensed persons when such persons are required by law to have occupational or business licenses. See *Truitt v. Miller,* 407 A.2d 1073, 1079 (D.C.1979); *Miller v. Peoples Contractors, Ltd.,* 257 A.2d 476, 476–77 (D.C. 1969); *Rubin v. Douglas,* 59 A.2d 690, 691 (D.C.1948). But in all such circumstances, the courts have found in statutory language or legislative history reasons that indicate that fulfillment of the purpose of the law called for allowing recoupment. See *Rubin v. Douglas,* 59 A.2d at 691. In *Rubin,* the statute that explicitly prohibited the unlicensed practice of healing arts also provided criminal sanctions for violators; indeed the defendant had pleaded guilty to criminal charges based on the prohibition. 59 A.2d at 691. At least in part moved by the statute's extremely zealous hostility to such unauthorized practice, the court found that allowing recoupment would be appropriate. *Id.* And both *Miller* and *Truitt* involved a regulation that "prohibited" any advance payments to an unlicensed contractor under a home improvement contract. See *Truitt,* 407 A.2d at 1078; *Miller,* 257 A.2d at 477. The court held in both cases that allowing the unlicensed contractor to retain advance payments would be in direct contravention of the regulation. See *Truitt,* 407 A.2d at 1079; *Miller,* 257 A.2d at 477.

Here the statutory language explicitly bars unlicensed brokers from bringing actions for recovery, but is silent as to whether individuals in the plaintiffs' position are entitled to recover money already paid. As a general principle, more is required to impel a court to action than to convince it to leave matters where they are. As Justice Cardozo wrote while on the New York Court of Appeals:

The law may at times refuse to aid a wrongdoer in getting that which good conscience permits him to receive; it will not for that reason aid another in taking away from him that which good conscience entitles him to retain.

*Schank v. Schuchman,* 212 N.Y. 352, 359, 106 N.E. 127, 129 (1914). This seems appropriate, as use of the courts generates costs for society.

It is thus not surprising to find that other jurisdictions generally reject any automatic recovery rule. See "Recovery Back of Money Paid to Unlicensed Person Required by Law to Have Occupational License or Permit to Make Contract," 74 A.L.R.3d 637 § 2 (1977 & 1998 Supp.). A recent Maryland decision, quoting Cardozo, reasons that the case for recovery of amounts paid is a function "of the strength of the public policy involved together with the degree of violation of that policy under the facts of the case." *CitaraManis v. Hallowell,* 328 Md. 142, 613 A.2d 964, 971–72 (1992).

The purpose of the statute of course is to protect the public from "incompetence, fraud, and deception in real estate transactions." *RDP Development Corp.,* 657 A.2d at 304. The statute's explicit remedy has a strong tendency to achieve this goal—in the prophylactic sense of creating a sharp incentive to register. It seems doubtful if many will willfully launch themselves into real estate brokering without a license when they face complete inability to sue to enforce their contracts. The only obvious exception would be fly-by-night outfits from whom affirmative recovery would in any event be unlikely. Here, although there are undeveloped claims of fraud and misrepresentation (which may independently justify a recovery by Goldberg as a matter of contract law), the summary judgment record contains no evidence supporting recovery other than the Brokerage Act violation itself. Nor, of course, is there any indication that Goldberg is an unsophisticated investor of the sort the statute was evidently intended to protect. Accordingly, we do not see how Goldberg can be entitled to recoup past payments by virtue of the Brokerage Act except under a view that recovery is completely automatic. Yet, as District law has allowed automatic recovery under comparable (albeit readily distinguished) statutes, we are uncertain what course the District will take. We note that an unpublished Superior Court decision, *Marmac Investment Co. v. Wolpe,* No. 96–2858 (D.C. Superior Court, Nov. 24, 1997), not citable to us under our rule, D.C.Cir. Rule 28(c); see also D.C. Court of Appeals Rule 28(h) (which our rule makes pertinent), has rejected automatic recoupment and is now on appeal. See *Marmac,* appeal No. 97cv2016 pending. Accordingly, we certify to the District of Columbia Court of Appeals the question:

Where a party has performed brokerage services covered by the District of Columbia Brokerage Act's prohibition of use of the District's courts for recovery of compensation, D.C.Code § 45–1926(c), under what circumstances will the District of Columbia courts order the party performing the services to disgorge compensation already paid?

This court's opinion, together with copies of the briefs submitted on appeal, are transmitted herewith to the District of Columbia Court of Appeals.

\* \* \*

We affirm the district court's decision that Remsen's services are covered by the District Brokerage Statute and that Remsen is barred from enforcing the Letter Agreement. On receipt of a response to the certified question, this court will address the issue of the return to the Goldberg Company of fees already paid.

*So ordered.*