Gladys **GILLIAM**, Appellant,

v.

**TRAVELERS INDEMNITY CO., Inc.,**
Appellee.

No. 5690.

District of Columbia Court of Appeals.

Argued May 24, 1971.

Decided Sept. 28, 1971.

Arthur M. Wagman, Washington, D. C., for appellant.

John F. Myers, Washington, D. C., for appellee.

Before FICKLING, GALLAGHER and YEAGLEY, Associate Judges.

GALLAGHER, Associate Judge:

This is an appeal from the grant of summary judgment denying recovery to a homeowner under a bond required by regulations governing the conduct of the home improvement business in the District of Columbia.[1]

The following facts are undisputed. Appellant, Gladys Gilliam (plaintiff below), entered into a remodeling contract for the sum of $16,895 with Federal Superior, Inc., then doing business as a home improve-

---

1. Home Improvement Licensing Regulations, 5Y DCCR 1.1 to 4.15. These regulations were issued by the Commissioners on May 11, 1961 in Order No. 61–863 pursuant to D.C.Code 1967, §§ 47–2344 to –2345 and the "Home Improvement Business Bonding Act", D.C.Code 1967, § 2–2301 et seq.

ment contractor and bonded, as required,[2] in the amount of $5,000 by appellee, Travelers Indemnity Company, Inc. Work on the building progressed to the point of about two-thirds completion and then stopped, at which point $13,945.13 had been paid by appellant. Shortly thereafter, Harvey F. Greenwell, president and major stockholder of Federal Superior, appeared at appellant's residence and informed her that he could not complete the work on schedule without a final payment; and that if this were made the workmen would appear the following morning and complete the job. Appellant then gave Greenwell a check for $5,068.50, drawn to Federal Superior, making a total of $19,013.63[3] which had been paid to the contractor with the work only two-thirds completed.

No workmen appeared in the next few days and it developed that within two days after receiving the check the office of Federal Superior had been closed and Greenwell had absconded, not to be heard from since. Efforts to locate him have been unsuccessful. Appellant later engaged another contractor and the remodel-

ing was completed for the additional sum of $7,290.45.

Appellant filed suit against Federal Superior and appellee in the amount of the bond ($5,000).[4] A default judgment was entered against Federal Superior, by that time a defunct corporation. A motion for summary judgment was filed against appellee to recover the full amount of the bond. Travelers Indemnity then filed a cross-motion for summary judgment against appellant. The trial court granted the insurance company's motion and denied appellant's, ruling appellant had failed to show that the financial loss was suffered "in connection with the transaction between her and the principal and arising out of a violation of statute or regulation, for which the principal was subject to criminal prosecution by the United States or the District of Columbia."[5]

The central issue is whether the uncontroverted affidavits filed in support of appellant's motion for summary judgment established a valid claim within the coverage of the Home Improvement Licensing Bond. We think they did.

2. Section 2.4(a) of the Home Improvement Licensing Regulations provides in pertinent part:
   Each applicant for license as a contractor shall file in the Office of the Director a bond issued in support of the license for which application is made * * *. Each such bond shall be a form approved by the Director and shall be conditioned as required by [the Home Improvement Business Bonding Act] but such conditions shall not be construed, and shall not be understood, to require any surety to be responsible for the completion of a home improvement contract entered into by the principle on such bond, nor shall a surety be liable under such bond for any claim other than a claim for financial loss suffered by a homeowner in connection with the transaction between him and the principal and arising out of a violation of statute or regulation for which the principle [sic] was subject to criminal prosecution by the United States or the District of Columbia, as the case may be.

3. Apparently some extras had been contracted for subsequent to execution of the original contract in the amount of $16,895.

4. So far as pertinent the bond provided:
   NOW THEREFORE. The conditions of the above obligation are such that if the above bounden *Federal Superior, Inc.* shall in all respects comply with the provisions of the Acts of Congress approved July 1, 1932, 47 Stat. 550 as amended, and September 6, 1960, 74 Stat. 815, and the Home Improvement Business Regulations and amendments thereto made, or which may be hereafter made, and shall pay all damages occasioned to any person by reason of any violation of the aforesaid Acts and Regulations in carrying on the business for which such license is granted, then this obligation to be void, otherwise to remain in full force and virtue.

5. The court's finding was in the language of the pertinent regulation (sec. 2.4(a)); see note 2, *supra*.

Congress passed the Home Improvement Business Bonding Act [6] because of a growing pattern of complaints from homeowners in the District who had been victimized by unscrupulous home improvement contractors. It concluded a bond was required of these contractors to insure that they would be financially responsible.[7] Congress authorized the District Commissioners to promulgate regulations requiring applicants for a license in this field to obtain a bond in order to protect the public against financial loss for failure of the licensee to observe the various laws and regulations relating to the licensee's conduct of his business.[8] The Commissioners later enacted these regulations.[9] So far as pertinent, the regulations provide that (a) the surety shall not be required to be responsible for the completion of a home improvement contract, and (b) the surety shall not be liable for any claim "other than a claim for financial loss suffered by a homeowner in connection with the transaction between him and the principal and arising out of a violation of statute or regulation for which the principal was subject to criminal prosecution by the United States or the District of Columbia * * *." [10]

We think this is a typical instance where Congress and the Commissioners intended protection of a homeowner by means of a bond. It is undisputed that when the job was two-thirds finished the contractor inveigled the final payment ($5,068.50) from the homeowner and absconded.

The indemnity company contends, principally, that to hold it liable here under the bond would be to construe the bond as a performance bond; and that the regulation (section 2.4(a)) specifically provides that the bond does not require a surety to be responsible for the completion of a home improvement contract. The indemnity company apparently reaches this conclusion by excluding the existence of "a violation of a statute or regulation for which Federal Superior, Inc. or its president, Harvey F. Greenwell, are or were subject to criminal prosecution." (Brief for appellee at 6.) This is where we depart.

The test laid down in the District's regulation "arising out of a violation of statute or regulation for which the principal *was subject to criminal prosecution* by the United States or the District of Columbia * * *" (emphasis supplied), leaves something to be desired from the standpoint of draftsmanship. Be that as it may, it is our duty to construe it. No legislative intent is apparent on this point.[11]

We think the reasonable construction of this regulation is that one should be considered "subject to criminal prosecution" in a suit to recover under the home improvement bond if facts appear which in the court's opinion would constitute a prima facie case of a violation of any criminal statute committed in connection with the home improvement contract or, where applicable, a pertinent home improvement regulation violation carrying a criminal penalty.

This leads to whether the conduct of Mr. Greenwell in obtaining the final payment under the contract and not only failing to complete the work but vanishing with the money meets the test. We not only think it does but consider that home improvement bonds would be a rather empty gesture if they did not cover this aggravated factual situation.

---

6. D.C.Code 1967, § 2–2301 et seq.

7. S.Rep.No.1829, 86th Cong., 2d Sess. 2–3 (1960).

8. D.C.Code 1967, § 2–2302(a) (1).

9. *See* note 1, *supra.*

10. 5Y DCCR 2.4(a); *see* note 2, *supra.*

11. There does not seem to be available a transcript of the hearings held by the District government leading to the regulations. Apparently a copy of the transcript has not been preserved in its files, which is most unfortunate.

Section 4.14 of the home improvement regulations [12] provides a criminal penalty for the violation of any provision of the home improvement regulations. Consequently, if Greenwell's conduct violated any material provision [13] of the regulations, he would be "subject to criminal prosecution," and the surety would be liable on the bond.

As we have seen, the prevention of fraudulent practices in connection with home improvement contracts was a primary goal sought by Congress in the Home Improvement Business Bonding Act. In accordance with Congress' basic aim of protecting homeowners from these practices by home improvement contractors, the regulations expressly forbid fraudulent practices by the contractors. This is stated in section 4.11 which enumerates grounds for the denial, suspension, or revocation of a home improvement license. Specifically, paragraph 5 of section 4.11 prohibits:

> Employment of any fraudulent or misleading device, method or practice in connection with the negotiation or performance of contract for home improvement work.

This provision constitutes the sole, explicit prohibition of fraudulent practices in the regulations. Since the purpose of the general penalty provision is to ensure compliance with the material provisions of the home improvement regulations, it is reasonable that the Commissioners intended the general penalty section to apply to this clause which embodies the basic goal of the regulations, viz. the prohibition of fraudulent practices. Consequently, the regulations should be construed to provide that fraudulent practices not only constitute a basis for suspension or revocation of a license but also are violations punishable under the general penalty provision (section 4.14). Moreover, it is quite consistent with the purpose of the regulations that they should provide both a method of protecting the public by suspending or revoking a fraudulent contractor's license and also a means of imposing a criminal penalty for fraudulent activities already performed by the contractor.

In our view, the factors of Greenwell's assurance to Mrs. Gilliam that if she made an immediate final prepayment the workers would return the following day, coupled with the failure of the workers to appear and complete the job, Greenwell's disappearance, and no refunding of the money, present a sufficient basis for finding a prima facie violation of section 4.11(5) of the home improvement regulations.

It hardly needs to be said that this should not be construed as a holding by this court that a crime has been committed by Greenwell. Rather, we consider that, as a matter of statutory construction, the facts admitted on the motion for summary judgment are sufficient basis for the purpose of this civil litigation to conclude he would be "subject to criminal prosecution." Obviously, if Greenwell were to be located and could adequately demonstrate that a crime was not in fact committed, no criminal prosecution should result.

It would be unrealistic to conclude that the "principal" could not be "subject to criminal prosecution" because the contract was executed by the corporation (Federal Superior, Inc.) which since became defunct. The corporation was acting thru

---

12. Section 4.14 states:

Any person who violates any provision of these regulations made pursuant to the Act of Congress approved September 6, 1960 (74 Stat. 815, Public Law 86–715), shall upon conviction be punished by a fine not exceeding $300 or by imprisonment for not more than ninety days or both. Any person violating any other provision of these regulations shall upon conviction be punished by a fine not exceeding $300 or by imprisonment for not more than 90 days or both.

13. Though the regulation provides a penalty for the violation of "any provision," the court does not express any opinion as to the constitutional permissibility of imposing a criminal penalty for violations of other specific provisions.

Greenwell, its president and major stockholder, and it was he who collected the prepayment and absconded. For purposes of this case, we construe Greenwell to fall within the term "principal."

We hold that under the regulations (section 2.4(a)) the surety is liable on the bond and it was error to grant appellee summary judgment. Since there appears to be no factual issue in the case and only a question of law is presented, we see no purpose in remanding the case for further proceedings.

Judgment reversed with instructions to enter judgment for plaintiff.