**BATHROOM DESIGN INSTITUTE, a Maryland corporation, et al., Appellants,**

v.

**Ella PARKER and Walter Parker, Appellees.**

**No. 7297.**

District of Columbia Court of Appeals.

Argued Dec. 5, 1973.

Decided March 27, 1974.

David F. Grimaldi, Washington, D. C., with whom Richard W. Galiher, William H. Clarke, Frank J. Martell and William J. Donnelly, Jr., Washington, D. C., were on the brief, for appellants.

Sol M. Alpher, Washington, D. C., for appellees.

Before KELLY and GALLAGHER, Associate Judges, and QUINN, Associate Judge, retired.

GALLAGHER, Associate Judge:

After trial in Superior Court the surety in this case was held to be liable on a home improvement contractor bond and on appeal this court is once again called upon to construe the Home Improvement Business Act [1] and the Home Improvement Licensing Regulations.[2] This case involves the extent of liability incurred by a surety when an unlicensed contractor it has bonded fails to perform under a home improvement contract.

On May 2, 1967, appellant Insurance Company of North America, Inc. (hereinafter INA) entered into a bond agreement whereby it agreed to act as surety for Bathroom Design Institute, Inc. (hereinafter Bathroom Design) in order that it might engage in home improvement business in the District of Columbia. Bathroom Design, however, did not later procure a license to engage in such business in the District of Columbia.

Bathroom Design later entered into a written contract with appellees Ella and Walter Parker (hereinafter the Parkers) whereby it promised to waterproof the basement of their home in the District of Columbia and they promised to pay the sum of $2,515.00. The Parkers then executed a promissory note to Citizens Building and Loan Association in the amount of $3,157.67 (including interest) and Bathroom Design received $2,515.00 prior to beginning work on the Parkers' home.

Bathroom Design then performed certain work on the premises. The basement continued to leak and despite the protestations of the Parkers, and the admission by its agent that the work had not been performed correctly, Bathroom Design's work crew never returned to waterproof the basement as contemplated by the contract. The Parkers brought this action demanding judgment in the amount of $3,157.67, the total amount they alleged they were obligated to pay to the lender as a result of the transaction set out above.

Bathroom Design is now defunct and nonexistent. INA was sued as surety and the principal issue at trial was the amount of damages suffered by the Parkers as a result of the transaction. It was the position of INA that the general rule of damages for breach of a construction contract should apply; i. e. the cost of the additional work necessary to complete the contract.[3] The Parkers on the other hand took the position that, given this court's prior interpretations of the Home Improvement Business Act and the regulations issued thereunder,[4] this was a special case entitling them to full restitution of all monies paid. The Parkers also showed that they entered into a subsequent contract with Meridian Waterproofing Corporation to waterproof their basement for the sum of $3,024.60. Since this work was performed, the basement has remained waterproof.

The trial court found that Bathroom Design's conduct violated Section 2.1 of the Home Improvement Licensing Regulations, in that advance payment was accepted

---

1. D.C.Code 1973, § 2–2301 et seq.

2. D.C. Rules and Regulations, Title 5Y.

3. See, e. g., Thorne v. White, D.C.Mun.App., 103 A.2d 579 (1954) ; Fleming v. Twine, D.C. Mun.App., 58 A.2d 498 (1948).

4. See Gilliam v. Travelers Indemnity Co., D.C. App., 281 A.2d 429 (1971) ; Miller v. Peoples Contractors, Ltd., D.C.App., 257 A.2d 476 (1969). Cf. Wm. J. Davis, Inc. v. Slade, D.C.App. 271 A.2d 412 (1970).

while the corporation was not licensed to do business in the District of Columbia.[5]

By so doing, the trial court found, Bathroom Design rendered itself subject to criminal prosecution,[6] and its surety liable on the bond. The trial court thereupon entered judgment for the Parkers in the sum of $3,157.67, the amount of their original indebtedness to the lending institution.

INA assigns as error (a) the trial court's failure to apply the traditional rule of damages and, in the alternative, (b) the inclusion of interest paid on the home improvement loan in the plaintiffs' judgment.

█ The crux of appellants' argument on measurement of damages is that this is essentially an action for breach of contract. It is not. The contract was void and unenforceable, Miller v. Peoples Contractors, Ltd., D.C.App., 257 A.2d 476, 478 (1969), Brown v. Southall Realty Company, D.C.App., 237 A.2d 834 (1968), and because the work was performed in contravention of regulations designed for regulatory purposes in exercise of the police power, there was no equitable base upon which quasi-contractual recovery could be predicated. Miller v. Peoples Contractors, Ltd., *supra* at 478 of 257 A.2d; Rubin v. Douglas, D.C.Mun.App., 59 A.2d 690 (1948); *see* Cook v. James E. Griffith, Inc., D.C.App., 193 A.2d 427 (1963).

█ The real question is the extent of the principal's liability. "The plaintiff's claim against the surety can be no greater than his claim against the principal; and if the principal is not liable, neither is the

surety." Broder v. Hartford Acc. & Indemnity Co., 106 F.Supp. 343, 346 (D.D.C. 1952). In Miller v. Peoples Contractors, Ltd., *supra* at 478 of 257 A.2d, we said:

. . . The Commissioners enacted the Regulations to prevent, among others, those who do home improvement business without a license from exacting payment without performing since they have not provided satisfactory evidence of their reliability. Here, as in Rubin v. Douglas, *supra*, "[t]he public interests * * * are best served by requiring defendant to pay back the fruits of his illegal agreement." . . .

This is the case here. The "fruits" of the illegal agreement retained by the contractor in this case amounted to $2,515.00 and by reason of D.C.Code 1973, § 2–2302(c) the surety is likewise liable.

█ The Home Improvement Business Act (D.C.Code 1973, § 2–2302(c)), creates in persons such as the Parkers a statutory cause of action against the surety,

to recover in an amount not exceeding the penalty of the bond *any damages sustained by reason of any act, transaction, or conduct* of the licensee, or of any officer, agent, employee, salesman, or other person acting on behalf of said licensee, *which is in violation of law or regulation in force in the District relating to the licensed activity.* . . . [Emphasis added.]

In this case the obligation incurred by the Parkers is evident. They became indebted in the sum of $3,157.67 for which they had

5. That section provides:
No person shall require or accept any payment under a home improvement contract in advance of the full completion of all of the work required to be performed by such contract, unless such person is licensed as a home improvement contractor or as a licensed salesman employed by such licensed contractor.

6. 5Y DCRR § 4.14 states:
Any person who violates any provision of these regulations made pursuant to the Act

of Congress approved September 6, 1960 (74 Stat. 815; Public Law 86–715), shall upon conviction be punished by a fine not exceeding $300 or by imprisonment for not more than ninety days or both. Any person violating any other provision of these regulations shall be punished by a fine of not more than $300 or imprisonment for not more than 90 days.

nothing of substance to show in return, as their basement continued to leak. Bathroom Design, however, received only $2,515.00 and we conclude, upon the record of this case, that the evidence was insufficient to hold the principal and surety liable for the additional $642.67 interest paid by the Parkers to Citizens Building and Loan Association.

The contract called for payment under a deferred payment plan at the rate of $53.00 per month, including interest, for a period of sixty months ($3,180.00). However, the Parkers instead obtained financing from a private lender. Mrs. Parker testified that Bathroom Design's agent drove her to the offices of the lending institution where the note was waiting for signature. In return for the note Mrs. Parker received a check in the amount of $2,515.00 which was then endorsed over to Bathroom Design. The record is devoid of any evidence indicating that Bathroom Design or its agent was a party to this credit transaction or that it arranged for the financing.[7] The statute, D.C.Code 1973, § 2–2302(c), limits the amount of damages recoverable to those sustained "by reason of any act, transaction, or conduct" of the home improvement contractor "which is in violation of law or regulation in force in the District relating to the licensed activity." Because there is no support for the judgment of the trial court awarding the $642.67 interest to the Parkers, that portion of the verdict against the contractor and the surety must be set aside. D.C.Code 1973, § 17–305(a).

■ We are not unmindful that this case arises in the context of a regulatory scheme. Because this is remedial legislation designed for the protection of the homeowner, the Act should be broadly construed to effectuate its purpose. *See* Gardner and North Roofing and Siding Corp. v. Board of Governors of Federal Reserve System, 150 U.S.App.D.C. 329, 332, 464 F.2d 838, 841 (1972); *see also* Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). "Congress and the Commissioners intended protection of [the] homeowner by means of a bond." Gilliam v. Travelers Indemnity Co., D.C. App. 281 A.2d 429, 431 (1969). Congress provided this protection because of evidence before it of widespread victimization of District of Columbia homeowners by unscrupulous home improvement contractors. The bond requirement in the statute is a legislative effort to remove such contractors from the home improvement business,[8] an assumption being that sureties will decline to bond contractors without first conducting a reasonable exploration of their dependability.

We cannot, however, construe the statute to impose liability beyond the proofs made at trial. The judgment of the trial court must therefore be reduced to the amount of $2,515.00.

So ordered.

7. In regulations promulgated pursuant to the Federal Truth-in-Lending Act, 15 U.S.C.A. § 1601 et seq. (Supp.1973), the Board of Governors of the Federal Reserve System have, by way of definitions, stated:

"Creditor" means a person who in the ordinary course of business regularly extends or arranges for the extension of consumer credit, or offers to extend or arrange for the extension of such credit. [12 C.F.R. § 226.2(m) (1973).]

"Arrange for the extension of credit" means to provide or offer to provide consumer credit which is or will be extended by another person under a business or other relationship pursuant to which the person arranging such credit . . . has knowledge of the credit terms and participates in the preparation of the contract documents required in connection with the extension of credit. It does not include honoring a credit card or similar device where no finance charge is imposed at the time of that transaction. [12 C.F.R. § 226.2(f) (1973).]

8. Complaints about this industry ranked second among all complaints filed with Better Business Bureaus throughout the country and the National Better Business Bureau estimated that fraudulent practices in the industry cost consumers from 500 million to 1 billion dollars annually. Hearings on S.J.Res. 130, S. 3065, and S. 3066 Before the Senate Commerce Committee, 90th Cong., 2d Sess., ser. 90–64, 43 (1968).