CAPITAL CONSTRUCTION COMPANY, INC., Appellant,

v.

PLAZA WEST COOPERATIVE ASSOCIATION, INC., Appellee.

No. 91–530.

District of Columbia Court of Appeals.

Argued Feb. 11, 1992.
Decided March 13, 1992.

Darrell Thomas, for appellant.

Douglas B. Mishkin, with whom Michael R. Goodstein, was on the brief, for appellee.

Before ROGERS, C.J., and TERRY and FARRELL, JJ.

PER CURIAM:

This dispute arose out of a construction contract involving major renovations to an apartment building as part of a conversion by the tenants to a cooperative association. On motion, the Superior Court awarded summary judgment to the defendant-appellee, Plaza West Cooperative Association, Inc., and dismissed the complaint of plaintiff-appellant, Capital Construction Co., Inc.

The judge ruled that Capital, by accepting progress payments when it was not licensed as a home improvement contractor, had violated 16 DCMR § 800.1 (1987), and thus could not enforce the contract. We affirm.

I.

On August 18, 1987, Capital and Plaza West agreed that Capital would renovate an apartment building owned by Plaza West in return for $857,600. Although not a party to the agreement, the District of Columbia Department of Housing and Community Development assisted in financing the project and, as a result, exercised considerable control over the contract's terms. Moreover, the agency also required that Capital obtain a home improvement contractor's license before beginning construction. Capital acquired its license on November 1, 1987, and construction commenced on January 22, 1988.

The project did not proceed as planned; a dispute arose, and in May or June of 1989, Capital quit the job site. Plaza West then declared Capital in default and terminated the agreement. In response, Capital filed a mechanic's lien on Plaza West's building, and in May 1990, brought an action to enforce the lien, claiming in addition substantial damages for fraud and breach of contract. Before the matter came to trial, however, Plaza West moved for summary judgment, asserting that Capital had allowed its home improvement contractor's license to expire on December 31, 1988, and had accepted progress payments totalling $268,689.14 thereafter, thus violating 16 DCMR § 800.1 and rendering the contract unenforceable. The trial judge agreed, and entered judgment against Capital.

II.

In the District of Columbia, it is a principle of long standing that " 'an illegal contract, made in violation of a statutory prohibition designed for police or regulatory purposes, is void and confers no right upon the wrongdoer.' " *Miller v. Peoples Contractors, Ltd.*, 257 A.2d 476, 477 (D.C.

1969) (quoting *Hartman v. Lubar,* 77 U.S.App.D.C. 95, 96, 133 F.2d 44, 45 (1942), *cert. denied,* 319 U.S. 767, 63 S.Ct. 1329, 87 L.Ed. 1716 (1943)); *see also Family Construction v. District of Columbia Dep't of Consumer & Regulatory Affairs,* 484 A.2d 250, 254 (D.C.1984) (collecting cases). This rule applies to a breach of 16 DCMR § 800.1, a prohibitory regulation enacted to protect the public.[1] *Miller v. Peoples Contractors, Ltd.,* 257 A.2d at 478. The regulation states unequivocally: "No person shall require or accept any payment for a home improvement contract in advance of the full completion of all work required to be performed under the contract, unless that person is licensed as a home improvement contractor. . . ." 16 DCMR § 800.1. Therefore, we have oft held "that receipt of payment by an unlicensed contractor before completion of the work under the contract violates the home improvement regulations and renders the contract void and unenforceable," *Nixon v. Hansford,* 584 A.2d 597, 598 (D.C.1991) (citing cases), even on a quasi-contractual basis. *Truitt v. Miller,* 407 A.2d 1073, 1079 (D.C.1979); *Bathroom Design Inst. v. Parker,* 317 A.2d 526, 528 (D.C.1974); *see also Highpoint Townhouses, Inc. v. Rapp,* 423 A.2d 932, 936 n. 5 (D.C.1980) (noting that purposes of licensing statutes would be frustrated if recovery were permitted for work performed without a license).

The strictness with which we have adhered to this rule has sometimes led to "seemingly harsh result[s]." *Nixon v. Hansford,* 584 A.2d at 599; *see Billes v. Bailey,* 555 A.2d 460, 462 (D.C.1989) (contract unenforceable even though appellant-homeowner, "herself a former home improvement contractor, was no doubt familiar with the licensing rules, and might take advantage of appellee's vulnerable position as an unlicensed contractor"). Nevertheless, we have deferred to "the legislature's intentional exposure of unlicensed contractors," *id.,* in order to carry out the legislative purpose of protecting homeowners from fraudulent and unscrupulous practices in the home improvement industry. *See id.; Truitt v. Miller,* 407 A.2d at 1077–78; *Gilliam v. Travelers Indemnity Co.,* 281 A.2d 429, 432 (D.C.1971). We have also recognized that, to accomplish their remedial objectives, the regulations and the Home Improvement Business Act[2] which they implement should be interpreted broadly. *Karr v. C. Dudley Brown & Assocs., Inc.,* 567 A.2d 1306, 1309 (D.C.1989); *Bathroom Design Inst. v. Parker,* 317 A.2d at 529.

### III.

■ On this appeal Capital argues principally that the home improvement regulations have no application to this case because, in essence, the agreement here was not a contract for "home improvement" as that term is commonly understood, but rather a major construction contract involving renovation of an entire apartment building as part of a conversion to a tenant-owned cooperative association.[3]

---

1. The home improvement regulations were issued pursuant to several statutes. *See Gilliam v. Travelers Indemnity Co.,* 281 A.2d 429, 429 n. 1 (D.C.1971). D.C.Code § 2–501 (1988) authorizes the Council of the District of Columbia, "in connection with the licensing of persons engaged in the home improvement business, . . . to require the furnishing of bond as a condition to the issuance of such license," and to promulgate regulations further defining "home improvement business." D.C.Code §§ 47–2842 and 47–2844 (1990) further empower the Council to license home improvement businesses, and "to make any regulations that may be necessary." See also § 2–502.

2. D.C.Code §§ 2–501 to –507.

3. The record indicates that Capital obtained a home improvement contractor's license initial-ly, but allowed it to lapse fourteen months later before "the full completion of all work required to be performed under the contract," 16 DCMR § 800.1. In papers filed in opposition to the motion for summary judgment and incorporated by reference in its brief, Capital argued, however, that 16 DCMR § 800.1—and the rule enforcing it by permitting avoidance of the contract—were designed to penalize contractors who failed to obtain a license in the first instance, but did not reach a contractor that merely let its license expire without renewal in the course of a home improvement project. We perceive no basis for such a distinction. The plain language of the regulation means that once a contractor's license expires, the contractor may no longer require or accept progress payments before full completion and—if the contractor does accept such payments—it is

Contending that the cooperative association is not an individual "homeowner" in need of the protection contemplated by the regulators, Capital reminds us that "[t]he remedial nature of the statutory scheme does not ... grant this court license to endow these [r]egulations with a meaning which their drafters never anticipated." *Karr v. C. Dudley Brown & Assocs., Inc.*, 567 A.2d at 1309. On balance, however, we are not persuaded that the contract between Capital and Plaza West falls outside the reach of the regulations.

Capital's argument rests primarily on the definition of "residential property" in the home improvement regulations. The regulations first define a "homeowner" as "any person *or person's authorized agent* who enters into a contract for the performance of home improvement work on residential property owned or occupied by that person." 16 DCMR § 899.1 (emphasis added). "Home improvement work" means "the construction of one or more additions to, other improvement, repair, restoration, alteration, *conversion*, or replacement of any residential property." *Id.* (emphasis added). And "residential property" is defined in turn as "real property or interest in real property consisting of a single-family dwelling or two-family dwelling (flat), *including an individual apartment in a cooperative apartment building*, together with any structure or grounds appurtenant to the single-family or two-family dwelling." *Id.* (emphasis added).

To accept appellant's argument, we would have to conclude that the license requirement of 16 DCMR § 800.1 applies only when the occupant of "an individual apartment" in a cooperative building contracts for home improvement, not when—as here—a cooperative association, on behalf of its members, enters into an agreement with a contractor to renovate its members' individual apartments and the common areas. We reject this distinction as artificial and incompatible with the broad protective purpose of the license requirement. By including a cooperative apartment in the definition of "residential property," the drafters naturally understood that some home improvement work—defined specifically to include "conversion"—would extend to the common areas and structures "appurtenant to" individual apartment units and hence require a contract by the cooperative association, the entity that in effect is the common "authorized agent" of the apartment owners.[4] Moreover, even as to work on individual units, the result appellant urges is untenable. Had the many residents each contracted individually with Capital for performance of essentially the same work, there is no dispute that the work would have been covered by the license requirement. We are not persuaded that the regulators meant to penalize efforts by cooperative owners—acting through their association—to achieve reductions in cost by contracting jointly with a contractor for work benefitting each of them and the cooperative as a whole. In a word, we read the phrase "an individual apartment" in the definition of "residential property" as bespeaking the legislature's intent to include cooperative apartments within the regulatory protection, not to exclude them whenever the homeowners act—as sometimes they must—collectively to improve their property.

We therefore hold that the agreement between Capital and Plaza West came within the scope of the home improvement license regulation.

## IV.

In its remaining argument Capital asserts, in conclusory fashion, that sum-

---

barred from recovering the balance due under the contract. *Truitt v. Miller* and other cases cited *supra*.

**4.** As we pointed out in *Snowden v. Benning Heights Coop., Inc.*, 557 A.2d 151 (D.C.1989), ownership in the context of cooperatives is a hybrid concept. Although individual apartment occupants are "tenant[s] in some respects," leasing their apartments from the legal owner, the cooperative association, the "tenants" own shares of the cooperative and hence are proportionate co-owners of the property. For that reason their apartments are not treated as "rental units" under the D.C. Rental Housing Act. *Id.* at 156.

mary judgment was inappropriately granted because a genuine factual dispute exists as to whether it accepted progress payments after its license had expired. In its trial court pleadings, however, Capital was quite cryptic regarding this matter, asserting in a single sentence—in a supplemental opposition to the motion for summary judgment—that "Capital did not receive progress payments from the defendant in the amount of $268,689.14 subsequent to December 31, 1988, as alleged in O'Malley's Affidavit at paragraph 11." [5] Under Rule 56(e) of the Superior Court Rules of Civil Procedure, the factual allegations of a party moving for summary judgment must be countered with specificity, *Miller v. American Coalition of Citizens with Disabilities, Inc.*, 485 A.2d 186, 191 (D.C.1984); otherwise the facts alleged by the movant may be deemed admitted. Super.Ct.Civ.R. 12–I(k). Appellant's single denial of the

critical fact at issue is utterly ambiguous, for one cannot tell whether Capital denied receiving any payments after December 31, 1988, or was merely disputing the amount appellee claimed to have paid. In the latter case the denial was irrelevant: if Capital received *any* payments after its license expired, it could not enforce the contract.[6] We hold that the denial failed to controvert appellee's factual allegations with the definiteness Rule 56(e) requires.

The judgment of the Superior Court is

*Affirmed.*

---

**5.** Kevin P. O'Malley was an officer of CIH Ventures, Inc., retained by Plaza West to locate potential contractors and otherwise assist in the renovation of the property. His sworn affidavit, asserting that Capital had received payments on the contract after its license expired, was attached to appellee's motion for summary judgment. Capital's original opposition to that motion contained no statement setting forth disputed material facts. However on March 14, 1991, the trial judge ordered that each party file a supplemental memorandum on the legal issues raised by appellee's motion. In response, appellant filed a memorandum which, in the equivocal sentence quoted above, appeared to

dispute the fact of post-expiration payments. This allegation was not supported by affidavit, *see Burt v. First American Bank*, 490 A.2d 182, 185 (D.C.1985), and Capital never even raised the issue at the April 19, 1991 hearing on the motion.

**6.** Nor has Capital ever contended that, though it might have received payments after its license expired, these were received strictly for the benefit of licensed subcontractors whose work is excluded from the definition of "home improvement work" by 16 DCMR § 899.1. *Truitt v. Miller*, 407 A.2d at 1078.