Frank **MARZULLO** and Dimarva Construction Co., Inc., Appellants,

v.

Richard **MOLINEAUX** and John Molineaux, Appellees.

No. 93–CV–660.

District of Columbia Court of Appeals.

Argued Oct. 27, 1994.

Decided Dec. 22, 1994.

---

Fredric J. Einhorn, Rockville, MD, for appellants.

Morris R. Battino, Washington, DC, for appellees.

Before TERRY and STEADMAN, Associate Judges, and PRYOR, Senior Judge.

STEADMAN, Associate Judge:

■ Under the long-settled law of this jurisdiction, an unlicensed contractor who accepts payments under a home improvement contract prior to completion of the project loses all right to receive or retain any compensation for the work. The issue in this appeal is whether the trial court correctly ruled that a contract to renovate a vacant residential three-story row house in a substantial state of disrepair into an inhabitable two-family dwelling involved "home improvement work" on "residential property" within the meaning of the relevant regulations, thus making it a "home improvement contract." We affirm the ruling of the trial court.

### I.

In 1988, appellees Richard and John Molineaux acquired the real property in question, found by the trial court to be a "residential three story row house" located at 11 N Street, N.W., in the District of Columbia. The property accommodated five roomers, the last of whom vacated the property in June 1990. At that time, the property was completely vacant and in a substantial state of disrepair.

In August of 1990, appellees entered a written agreement with appellants Frank Marzullo and Dimarva Construction Co.,[1] under which appellants were to renovate the property into an inhabitable two-family dwelling.[2] Subsequently, several disputes arose between the parties regarding the cost and duration of the renovation, and appellants eventually quit the site.

Appellees then brought the instant suit to recover all amounts paid under the contract, alleging that the contract was covered by the home improvement regulations, 16 DCMR §§ 800 et seq. (1993), and that the appellants were in violation of the regulations because they were not licensed home improvement contractors and had accepted payment before the completion of the project. After a bench trial, the trial court awarded appellees $107,-366.41, and related fees and costs, as recovery for amounts paid under the contract.

■ On appeal, the parties do not significantly dispute the fact that appellants were

---

1. One of the significant issues at trial was whether Marzullo was a party to the contract. The trial court found that he was, and this ruling is not challenged on appeal. Marzullo was owner, president, principal officer, and registered agent of Dimarva.

2. The trial court took special note of appellees' testimony that they specifically desired to hire a home improvement contractor licensed in the District of Columbia, and that they were misled and deceived into believing that appellants were a licensed home improvement contractor. The court subsequently referred to Marzullo's misrepresentations as to his status as a licensed contractor as negating any possibility of applying any exception for incidental violations, citing *Schloss v. Davis*, 213 Md. 119, 131 A.2d 287, 291 (1957).

not licensed home improvement contractors while they were renovating the property or that, if such a license was required, our case law compels an affirmance. *See Capital Construction Co. v. Plaza West Coop. Association, Inc.,* 604 A.2d 428, 429–30 (D.C.1992), and cases cited.[3] Therefore, the sole issue on appeal is whether the trial court erred in its ruling that a license was required because the agreement between the parties, to renovate the row house into a two-family dwelling, was a "home improvement contract" within the meaning of the regulations.

## II.

▮ We have recently had occasion to recapitulate the applicable legal principles in interpreting the home improvement regulations. They are "prohibitory regulation[s] enacted to protect the public." *Capital Constr., supra,* 604 A.2d at 430 (footnote omitted). This court will "defe[r] to 'the legislature's intentional exposure of unlicensed contractors' in order to carry out the legislative purpose of protecting homeowners from fraudulent and unscrupulous practices in the home improvement industry." *Id.* (quoting *Billes v. Bailey,* 555 A.2d 460, 462 (D.C.1989)) (internal citations omitted). Additionally, most important here, "to accomplish their remedial objectives, the regula-

tions and the Home Improvement Business Act which they implement should be interpreted broadly." *Id.* (footnote omitted).

The key operative portion of the home improvement regulations[4] underlying our case law is found in section 800.1: "No person shall require or accept any payment for a home improvement contract in advance of the full completion of all work required to be performed under the contract, unless that person is licensed as a home improvement contractor ..." 16 DCMR § 800.1 (1993). The immediate question thus presented is whether the contract between the parties here was a "home improvement contract." The answer, of course, must be sought in the first instance in the definitional portion of the regulations, found in section 899.1.

The regulations there define a "home improvement contract" as "an agreement for the performance of home improvement work for a contract price of three hundred dollars ($300) or more." *Id.* § 899.1. In turn, "home improvement work" is defined as "the construction of one or more additions to, other improvement, repair, restoration, alteration, conversion, or replacement of any residential property."[5] *Id.* Finally, "residential property" is defined as "real property or interest in real property consisting of a sin-

3. The theory is that unlicensed contractors who violate the regulations by accepting payment before the completion of a construction project render a contract void and unenforceable, and therefore may not recover under it. *See Nixon v. Hansford,* 584 A.2d 597, 598 (D.C.1991). Any moneys paid may be recovered from the contractor, and no quantum meruit may be awarded. *See Truitt v. Miller,* 407 A.2d 1073, 1079 (D.C. 1979). These results ensue even though the homeowner has knowledge of the unlicensed status of the contractor. *See, e.g., Nixon, supra,* 584 A.2d at 598–99. Although these results are "seemingly harsh," *id.* at 599, we have determined that it effectuates the statutory purpose of "protecting homeowners from fraudulent and unscrupulous practices in the home improvement industry." *Capital Constr., supra,* 604 A.2d at 430. It might be noted that these legal principles have never been addressed by the court en banc, but likewise, the Council of the District of Columbia has not seen fit to modify the relevant statutes or regulations in light of our long-standing interpretations thereof. Indeed, we have applied similar principles in other types of work done by those without a requisite license. *See,*

*e.g., Saul v. Rowan Heating & Air Conditioning, Inc.,* 623 A.2d 619, 621 (D.C.1993) (no recovery for work done without requisite license under Refrigeration and Air Conditioning regulations) and cases cited.

4. The Home Improvement Regulations were promulgated pursuant to several statutes: D.C.Code § 2–501 (1994 Repl.), which authorizes the D.C. Council "in connection with the licensing of persons engaged in the home improvement business, ... to require the furnishing of bond as a condition to such license," and to promulgate regulations defining "home improvement business"; D.C.Code §§ 47–2842, –2844 (1990 Repl. & 1994 Supp.), which empower the Council to license home improvement businesses, and to make any regulations that may be necessary to further the statutory purpose; and D.C.Code § 2–502 (1994 Repl.), which authorizes the Council to set bond requirements. *See Capital Constr., supra,* 604 A.2d at 430.

5. We note that this definition is grammatically flawed. Presumably, there should be an "or" after the first comma and before "other."

gle-family dwelling or two-family dwelling (flat), including an individual apartment in a cooperative apartment building, together with any structure or grounds appurtenant to the single-family or two-family dwelling." *Id.*

Appellants focus upon the definition of residential property as property "consisting" of a single-family dwelling or two-family dwelling and argue in essence that only property actually so used at the time of contracting falls within the definition, or at least that the regulations should not apply when the last use of the property prior to contracting was not as a single-family or two-family residence. We think the trial court was correct in rejecting such a constricted interpretation of the regulations in the circumstances here.

As already noted, our case law requires that the regulations be "interpreted broadly."[6] The regulations themselves, in the definition of "home improvement work," explicitly indicate that they reach to the "conversion" of residential property, a fair characterization by the trial court of the instant transaction.[7] Here, even at the time of contracting, the property was a vacant residential three-story row house and with renovation, it was inhabitable as a two-family dwelling, and we cannot say that the trial court erred in applying the regulations to this renovation contract to effectuate such a use.[8]

We think this case is controlled by our decision in *Capital Construction Co. v. Plaza West Coop., supra.* There, we applied the regulations to what we characterized as "a construction contract [for $857,600] involving major renovations to an apartment building as part of a conversion by the tenants to a cooperative association." 604 A.2d at 429.

We stressed that home improvement work was "defined specifically to include 'conversion'", *id.* at 431, and saw no reason why the fact that the cooperative association entered into the contract rather than individual co-op members or that the contract covered common areas as well as the individual apartments should preclude the application of the regulations to the transaction. It is true that we conceptualized the association as the agent of the cooperative members.[9] *See id.* at 430–31. However, the regulations define a "homeowner" as "any person or person's authorized agent who enters into a contract for the performance of home improvement work on residential property owned or occupied by that person." 16 DCMR § 899.1 (1993). Since it is undisputed on appeal that appellees were the owners of the subject property and the record before us is otherwise silent as to their relationship to the property and the renovation project, we see no basis to fault the trial court in treating appellants as parties legitimately entitled to the protection of the regulations.

In sum, we conclude that in the circumstances here, the trial court did not err in determining that this contract to renovate a residential structure into "residential property" as defined in the regulations was a home improvement contract, and in thus entering judgment for the appellees.

*Affirmed.*

---

6. This is not to say that the regulations should be expanded beyond reasonable limits. As we noted in *Karr v. C. Dudley Brown & Assocs.*, 567 A.2d 1306, 1309 (D.C.1989): "The remedial nature of the statutory scheme does not, however, grant this court license to endow these Regulations with a meaning which their drafters never anticipated."

7. The trial court referred to the contract in its findings of fact as involving a "renovation" and subsequently at times as a "conversion." We note that the regulations also apply to the "restoration" of residential property, as defined, another indication that their sweep was not strictly confined to active current use. No suggestion is made that appellants were unaware of the purpose of the work to be done under the contract.

8. We thus do not here reach, for example, the renovation of former office or business space or even of property which was at the time of contracting in active residential use other than for one or two families.

9. As indicated above, the definition in the regulations of "residential property" includes "an individual apartment in a cooperative apartment building."