**CARLSON CONSTRUCTION COMPANY, INC.,**
**Appellant,**

v.

**DUPONT WEST CONDOMINIUM, INC., Appellee.**

**No. 06–CV–918.**

District of Columbia Court of Appeals.

Argued June 12, 2007.

Decided Sept. 27, 2007.

---

Lucas F. Webster, with whom Nicole L. Campbell, Columbia, MD, was on the brief, for appellant.

John E. Scheuermann, with whom Elizabeth Menist and Stephanie E. Carnes were on the brief, for appellee.

Lawrence M. Prosen and Andrew N. Cook, Washington, DC, were on the brief for amicus curiae The Metropolitan Washington Chapter Associated Builders and Contractors, Inc.

Before RUIZ, KRAMER, and BLACKBURNE–RIGSBY, Associate Judges.

RUIZ, Associate Judge:

Carlson Construction Company, Inc. ("Carlson") appeals the grant of summary judgment dismissing its breach of contract action against appellee, Dupont West Condominium, Inc. ("Dupont West"), under a contract to renovate the common areas of appellee's condominium building. We agree with the Superior Court that, under the relevant regulations, the units of the Dupont West Condominium are properly deemed "residential property," and that Carlson performed "home improvement work" in the condominium building while not licensed as a "home improvement contractor." As a result, because Carlson accepted advance payments for work done under the contract, the contract was rendered void and unenforceable, and Dupont West became entitled to reimbursement of progress payments paid to Carlson. We

therefore affirm the grant of summary judgment to appellee.

## I.

The Dupont West Condominium is a ten-story condominium building located at 2141 P Street, N.W., consisting of ninety-five individual units (of which eighty-eight are exclusively for residential use and seven may be used for commercial purposes) and an underground parking garage for its residents. On August 14, 2004, Dupont West entered into an agreement with Carlson to renovate some of the building's common areas. Under the terms of the agreement, Carlson was to renovate the vestibule, lobby, elevators, mail room, and hallways, and Dupont West was to pay Carlson a total of $183,500, with progress payments due as work was completed. Carlson commenced working on the project, and on December 16, 2004, Dupont West paid Carlson $108,000 for the work that had been performed to that point.

In March of 2005, before all the work under the contract had been completed, Dupont West became aware that Carlson was not licensed as a home improvement contractor in the District of Columbia. When Dupont West refused to make further payments for work performed under the contract, Carlson sued for breach of contract. Dupont West counterclaimed, seeking repayment of the $108,000 it had paid to Carlson, on the ground that the contract was void *ab initio*.

The trial court concluded that the District of Columbia Municipal Regulations require that contractors working on condominium buildings be licensed as home im-

provement contractors. It therefore granted summary judgment in favor of Dupont West and ordered that Carlson return the $108,000 it had already been paid. Carlson filed this timely appeal.

## II.

■■■■ Where a trial court has granted summary judgment, and has done so based on interpretation of a statute, our standard of review is well-defined.

> This court reviews both trial court decisions granting summary judgment and questions of statutory interpretation *de novo*. We first look at the language of a statute to interpret a statute. We are required to give effect to a statute's plain meaning if the words are clear and unambiguous. The literal words of a statute, however, are not the sole index to legislative intent, but rather, are to be read in the light of the statute taken as a whole, and are to be given a sensible construction and one that would not work an obvious injustice.

*District of Columbia v. Bender,* 906 A.2d 277, 281–82 (D.C.2006) (internal quotation marks and citations omitted).

■■■■ In the District of Columbia, no person may "require or accept payment for a home improvement contract in advance of the full completion of all work required" unless that person is licensed as a "home improvement contractor." 16 DCMR § 800.1.[1] The regulation defines a "home improvement contract" as "an agreement for the performance of home improvement work" of at least $300. 16 DCMR

---

1.  The regulation states in its entirety:
    No person shall require or accept any payment for a home improvement contract in advance of the full completion of all work required to be performed under the contract, unless that person is licensed as a

home improvement contractor or as a licensed salesperson employed by a licensed contractor in accordance with the provisions of this chapter.
16 DCMR § 800.1

§ 899.1.[2] As our cases establish, the effect of the regulation can lead to "seemingly harsh result[s]." *Nixon v. Hansford,* 584 A.2d 597, 599 (D.C.1991). If an unlicensed contractor accepts payment before completion of work under the contract, the agreement is rendered void and unenforceable. *See id.* at 598. As a result, the contractor is not entitled to contract damages and must return any payment received for work performed. *See Cevern v. Ferbish,* 666 A.2d 17, 19–20 (D.C.1995).

Under the regulations, a contractor performs "home improvement work" if it involves "residential property," which the regulations define as:

> [R]eal property or interest in real property consisting of a single-family dwelling or two-family dwelling (flat), including an individual apartment in a cooperative apartment building, together with any structure or grounds appurtenant to the single-family or two-family dwelling

16 DCMR § 899.1.

■ The question this case presents is whether units in a condominium building, such as Dupont West, come within the definition of "residential property." Relying on the principle of *expressio unius est exclusio alterius,* Carlson argues that since condominiums are not specifically mentioned in the definition, a plain reading of the regulation supports only the interpretation that contractors renovating condominiums need not be licensed. It bolsters its textual argument by noting that "cooperative apartment building[s]" are expressly listed in the regulation. Dupont West argues—and the trial court so ruled—that "the only sensible way to read the regulation is to include condominiums within the definition of a single-family dwelling." According to Dupont West, each condominium unit in the building is a "single-family dwelling," covered by the regulations. Both parties agree that if a condominium unit is a "single-family dwelling," work on the common areas of the condominium building, *e.g.,* the hallways that were renovated by Carlson, is "home improvement work" under 16 DCMR § 899.1 because those areas are "appurtenant" to the condominium units.

We agree with Dupont West that the regulation is properly construed to include condominiums. The home improvement regulations were promulgated in 1961 pursuant to several statutes. *See Gilliam v. Travelers Indem. Co.,* 281 A.2d 429, 429 n. 1 (D.C.1971) (noting that the regulations "were issued by the Commissioners on May 11, 1961 in Order No. 61–863 pursuant to D.C.Code 1967, §§ 47–2344 to – 2345 and the 'Home Improvement Business Bonding Act,' D.C.Code 1967, § 2–2301 *et seq.*"). At that time, the condominium form of ownership was not established as such under D.C. law. *See* Council of the District of Columbia, Committee on Housing and Urban Development, Report on Bill 1–179, "Condominium Act of 1976," June 16, 1976, at 1 (noting that "[i]n the last decade, the condominium form of ownership has become increasingly common"). Indeed, the condominium form of real estate ownership was not recognized until 1961, when the D.C. Horizontal Property Act was enacted, and a

---

2. The complete definition in the regulation is as follows:

> Home improvement contract—an agreement for the performance of home improvement work for a contract price of three hundred dollars ($300) or more. This term shall also include the second or any subsequent agreements entered into between the same contractor and the same homeowner within any twelve (12) month period, if the total of the contract prices of all the agreements aggregate three hundred dollars ($300) or more.

16 DCMR § 899.1

comprehensive statutory scheme for condominium organization and ownership was not established until 1977, when the Council enacted the "Condominium Act of 1976." *See* D.C.Code §§ 42–1901.01 *et seq.* (2001). It should not be surprising, therefore, that the housing regulations did not specifically list "condominiums" when they were promulgated as condominium ownership had not yet gained currency in the law. Now that condominiums are a well established—and fast proliferating— form of home ownership, to exclude condominiums from the definition of "single-family dwelling" would lead, as the trial court concluded, to the "bizarre result of excluding condominiums while including houses, duplexes, and coop apartments." Condominiums, like the other "real property or interest" listed in the definition of "residential property" are unquestionably a form of real property owned and used for residential purposes.[3] We conclude that they are covered by the home improvement regulation, "a prohibitory regulation enacted to protect the public," which because of its remedial objectives, is to be "interpreted broadly." *Capital Const. Co., Inc. v. Plaza West Co-op.*

*Ass'n, Inc.,* 604 A.2d 428, 430 (D.C.1992) (citations omitted). The condominium statute not only expressly recognizes this form of ownership but also makes clear that condominiums are to be treated just as any other owned residential property for zoning, land use, subdivision or building code purposes.[4] D.C.Code § 42–1901.05.

Carlson argues that, under a strict textual reading of the definition of "residential property," to include "condominiums" as "single-family dwellings" would render 16 DCMR § 899.1 nonsensical. It is Carlson's contention that if each condominium unit is a "single-family dwelling," then the term "dwelling" refers to "individual living spaces within [a] building," and therefore "there would have been no need to list 'two-family dwelling (flat)' " in the definition because each unit in a two-unit structure would already be considered a "single-family dwelling." *See Thomas v. D.C. Dep't of Employ. Servs.,* 547 A.2d 1034, 1037 (D.C.1988) ("A basic principle is that each provision of the [regulation] should be construed so as to give effect to all of the [regulation's] provisions, not rendering any provision superfluous.")

3. We have described condominium ownership as "legal title to the apartment in fee simple." *Lemp v. Keto,* 678 A.2d 1010, 1018 (D.C.1996)(citing *Berman v. Watergate West, Inc.,* 391 A.2d 1351, 1352 (D.C.1978)). A cooperative, on the other hand, is a "hybrid concept," in which apartment occupants are " 'tenant[s] in some respect,' leasing their apartments from the legal owner, the cooperative association, the 'tenants' own shares of the cooperative and hence are proportionate co-owners of the property." *Capital Const.,* 604 A.2d at 431 n. 4 (citing *Snowden v. Benning Heights Coop., Inc.,* 557 A.2d 151 (D.C. 1989)).

4. D.C.Code § 42–1901.05 provides:
No zoning or other land use ordinance or regulation shall prohibit condominiums as such by reason of the form of ownership inherent therein. Neither shall any condominium be treated differently by any zoning or other land use ordinance or regulation which would permit a physically identical project or development under a different form of ownership. No subdivision ordinance or regulation shall apply to any condominium or to any subdivision of any convertible land, convertible space, or unit unless such ordinance or regulation is by its express terms made applicable thereto. Nothing in this section shall be construed to permit application of any provision of the building code which is not expressly applicable to condominiums by reason of the form of ownership inherent therein to a condominium in a manner different from the manner in which such provision is applied to other buildings of similar physical form and nature of occupancy.

Appellee responds—and we agree—that defining "single-family dwelling" as each individually-owned condominium unit in a building (as opposed to the entire structure itself) does not render the term "two-family dwelling (flat)" superfluous. Carlson's reading assumes that the only reasonable interpretation of the term ("two-family dwelling (flat)") is a single structure that is parceled and where each part is independently owned. To the contrary, around the time the regulations were promulgated, the term "two-family dwelling" referred to a home capable of housing two families (by virtue of having two kitchens, separate entrances, etc.), but *owned by a single owner* who would rent out one or both living spaces. *Cf. Surratt v. Real Estate Exchange,* 76 A.2d 587, 588 (D.C. 1950) (referring to "two-family dwellings" as possibly housing tenants); *Jones v. Sheetz,* 242 A.2d 208, 210–11 (D.C.1968) (referring to a license "to operate the house as a 'flat,' a two-family dwelling"). Accordingly, each "living space" in such a "two-family dwelling" would not be considered a "single-family dwelling" because it is not independently owned; rather it is only part of a larger structure with another living space. In order for the legislature to ensure that these structures were covered by the regulation, therefore, it had to specifically include "two-family dwellings," which, apparently, were also referred to as "flats." We therefore reject Carlson's textual argument as a reason to exclude condominium units from the definition of "residential property." [5]

Carlson argues that there is a policy reason in support of including homes and cooperative apartment buildings but excluding condominium units in the home improvement regulations, which we also find unpersuasive. According to Carlson, condominium associations are sophisticated bodies that do not need the legislature's protection, but it cites no authority for this proposition. Moreover, Carlson has failed to articulate any reason why cooperative apartment buildings, which are governed by a board of directors and are specifically included in the definition, would as a class be any less sophisticated than condominium associations such that the legislature would conclude that the former require regulatory protection but the latter do not.

We hold that condominium units are "residential property" under 16 DCMR § 800.1, and, therefore, contractors renovating or otherwise improving the common areas of condominium buildings are required to be licensed. We affirm the trial court's judgment that Carlson may not enforce its contract with Dupont West and that Carlson must repay the monies received for work performed.

*Affirmed*

---

**5.** We do not limit our holding to cases where the party contracting for "home improvement work" is not the actual owner of the property, but is instead a tenant. The municipal regulations define "homeowner" as "any person or person's authorized agent who enters into a contract for the performance of home improvement work on residential property owned *or occupied* by that person." 16 DCMR § 899.1 (emphasis added).