**Moses CHARLERY, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS, Respondent.**

No. 08–AA–78.

District of Columbia Court of Appeals.

Submitted March 18, 2009.
Decided April 30, 2009.

Richard S. Basile, Greenbelt, MD, was on the brief, for petitioner.

Peter J. Nickles, Acting Attorney General for the District of Columbia at the time the brief was filed, and Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Solicitor General, and Catherine Ferrando, Assistant Attorney General, were on the brief, for respondent.

Before PRYOR, KERN and BELSON, Senior Judges.

BELSON, Senior Judge:

Petitioner, Moses Charlery, appeals an Office of Administrative Hearings final order holding him liable for two counts of violating D.C.Code § 47–2851.02(a) (2001) and fining him $2,000 for each count. Petitioner argues that there was no substantial evidence that he sold or provided home improvement services in the District of Columbia without the required basic business license with a general services and repair license endorsement for (1) home improvement contractor, or (2) home improvement salesperson. He also argues that he cannot be found to have sold home improvement services in the District of Columbia because it was in the state of Maryland that he entered into the agreement to provide such services in the District of Columbia. We disagree with both of his arguments and affirm.

## I.

Petitioner is a carpenter who lives in Maryland. Property owner Vicky Nolan met petitioner while he was working on a home in the District of Columbia. Petitioner and Nolan entered into an agreement on February 9, 2006,[1] for major home improvements to a property that Nolan owns in the District, but in which she does not reside. Petitioner testified that he told Nolan he did not possess a license to conduct the home improvements, but according to Nolan, petitioner told her that he did possess such a license at the time they entered into the agreement. Nolan testified that she paid petitioner $190,000 of the $200,000 contract price.

Records adduced by respondent, the District of Columbia Department of Consumer and Regulatory Affairs (DCRA), in-

dicated that petitioner did not have a basic business license with a general services and repair license endorsement for home improvement contractor from January 1, 2006, to July 16, 2007. Petitioner did acquire a basic business license with a general services and repair license endorsement to act as a home improvement *salesperson* (but not home improvement contractor) on June 1, 2006. Petitioner acknowledged, however, that he did not have that license with the necessary license endorsement for home improvement salesperson in February of 2006 when he contracted with Nolan for the home improvements to her property in the District.

Nolan testified that at some point she brought one M.J. Miller with her to the property in question. Miller noticed that the project was incomplete and behind schedule. Miller conducted some research and informed her that petitioner was not licensed in the District and offered to file a complaint on her behalf. According to Nolan, "the work had stopped" at this point. Nolan had a meeting with petitioner and Miller, and petitioner said he was "running behind time" and that he wanted more money for the project. Petitioner testified that "[i]n working for Miss Nolan some problems occurred where [he] had to do more work [and] charge her some more money for that." Nolan testified that when Miller told petitioner during the meeting that he did not have a license, petitioner walked out of the meeting. Miller then sent a letter to petitioner demanding that he complete work on Nolan's property or that he would be subjected to fines for engaging in home improvements without a license. On March 23, 2007, Miller submitted a complaint (on which

---

1. Although the contract is dated February 9, 2006, petitioner and Nolan signed the con-     tract on February 10, 2006.

Miller was identified as a "paralegal") against petitioner to DCRA.

On August 23, 2007, DCRA issued a Notice of Infraction to petitioner, alleging that he had engaged in business without a basic business license with a general services and repair license endorsement for (1) home improvement contractor or (2) home improvement salesperson. The Notice of Infraction lists the date of infraction for both alleged violations as February 9, 2006. Petitioner denied the infractions. An Administrative Law Judge ("ALJ") held a hearing and then issued a Final Order holding petitioner liable for two counts of violating D.C.Code § 47–2851.02(a) for "selling home improvement repair services to Ms. Nolan and performing such repairs at the property without being licensed." Petitioner filed a timely petition for review.

## II.

■ This court must affirm an agency's final order when (1) the agency has made findings of fact on each contested material issue of fact, (2) substantial evidence supports each finding, and (3) the agency's conclusions flow rationally from its findings of fact. *District of Columbia Dep't of Employment Servs. v. Vilche*, 934 A.2d 356, 360 (D.C.2007) (citing *Rodriguez v. Filene's Basement Inc.*, 905 A.2d 177, 180 (D.C.2006)). Substantial evidence means "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Baumgartner v. Police & Firemen's Ret. & Relief Bd.*, 527 A.2d 313, 316 (D.C.1987) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

■ Petitioner argues that there was no substantial evidence that he performed any home improvements on Nolan's property or that he performed the alleged

home improvements without the required license with endorsement for home improvement contractor. The ALJ found that the evidence demonstrated that petitioner engaged in home improvements to the property, although she inartfully located that finding in her "Conclusions of Law," rather than in her "Findings of Fact." We disagree with petitioner that there was no substantial evidence to support the finding that he performed any home improvements on the property. Petitioner testified that "[i]n working for Miss Nolan some problems occurred where [he] had to do more work [and] charge her some more money for that." In addition, Nolan testified that "the work had stopped" by the time Miller spoke to her about filing a complaint with DCRA and that during her meeting with petitioner he said, "we are running behind time" and wanted more money for the project. This testimony supports the ALJ's conclusion that petitioner performed some home improvements on the property.

In addition, the ALJ found that petitioner's home improvements on the property occurred some time before July 16, 2007, thereby demonstrating that petitioner violated D.C.Code § 47–2851.02(a) because the evidence established that he did not have the requisite license prior to that date. Although the ALJ's "Findings of Fact" do not specify the date on which petitioner conducted these improvements, the ALJ's finding that they occurred at some point before July 16 is supported by substantial evidence in the record. As noted above, Nolan testified that "the work had stopped" by the time she and Miller discussed filing a complaint against petitioner. Although it is unclear on what date this discussion took place, it was reasonable for the ALJ to conclude that the improvements occurred some time before March 23, 2007, when Miller filed the com-

plaint with DCRA on Nolan's behalf. Therefore, the ALJ's conclusion that petitioner performed home improvement work without the requisite license was supported by substantial evidence.

■ Petitioner also argues that there was no evidence that he performed any work on Nolan's property on February 9, 2006, the date cited in the Notice of Infraction as the date of the infractions. Although the Notice of Infraction lists the date of the infractions as February 9, 2006, and although the ALJ incorrectly stated during the hearing and in her Final Order that "[t]he Notice of Infraction alleged that the violations occurred on August 23, 2007," the parties nonetheless presented evidence that petitioner conducted home improvements on Nolan's property at some time after he and Nolan entered into the contract for home improvements on February 9, 2006. Petitioner, therefore, impliedly consented to litigating the issue of whether he performed home improvement work on Nolan's property on February 9, 2006, *or any date thereafter. Cf.* Super. Ct. Civ. R. 15(b) (1995) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."); *Moore v. Moore,* 391 A.2d 762, 768 (D.C. 1978) ("[I]f a court finds ... express or implied consent, it is authorized-indeed mandated-to resolve those issues even if the pleadings are not amended.") (citing 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 1493 (2d ed.1990)); *Kuhn v. Civil Aeronautics Bd.,* 87 U.S.App.D.C. 130, 132–33 n. 3, 183 F.2d 839, 841–42 n. 3 (1950) ("The applicability of [Fed.R.Civ.P. 15(b)], or its rationale, to an administrative proceeding where there is even less attempt at formalism follows *a fortiori.*"). We also note that petitioner's

counsel did not object to the introduction of evidence that petitioner engaged in home improvement work after petitioner and Nolan entered into the contract. *Cf. Moore, supra,* 391 A.2d at 768 (failure to object to introduction of evidence related to a "new issue" is the "clearest indication[ ] of a party's implied consent") (citing Wright, Miller & Kane, *supra,* § 1493). Accordingly, we conclude that the ALJ's findings regarding work performed on dates subsequent to February 9, 2006, are properly before us.

### III.

■ Petitioner's argument that there was no substantial evidence to support the conclusion that he engaged in home improvement *sales* that necessitated a basic business license with a general services and repair license endorsement for home improvement salesperson must similarly fail. Petitioner contends that he did not need such a license and license endorsement because negotiations for and entry into the agreement for home improvements to Nolan's District of Columbia property took place in Maryland. D.C.Code § 47–2851.02(a) provides:

> A person which is required under law to obtain a license issued in the form of an endorsement to engage in a business in the District of Columbia shall not engage in such business in the District of Columbia without having first obtained a basic business license and any necessary endorsements in accordance with this subchapter.

A person cannot avoid the reach of the foregoing provision by the simple expedient of being physically outside the boundaries of the District while entering into a contract to provide services within the District. *Cf.* D.C.Code §§ 47–2842, – 2844 (2008 Supp.) (Council of the District of Columbia is empowered to require a

license of any businesses that "in its judgment, require inspection, supervision, regulation, or any other activity or expenditure by any municipal agencies" and to issue regulations regarding same); *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) ("[T]he States have a compelling interest in the practice of professions within their boundaries, and ... they have broad power to establish standards for licensing practitioners and regulating the practice of professions."); *Woods v. District of Columbia Nurses' Examining Bd.*, 436 A.2d 369, 373 (D.C.1981) ("The Council of the District of Columbia has broad authority to regulate business and professional licenses. ...").

To conclude otherwise would encourage individuals to engage in home improvement sales outside of the District for services to be provided within the District in an attempt to avoid the District's regulations. *Cf. Horning v. District of Columbia*, 254 U.S. 135, 41 S.Ct. 53, 65 L.Ed. 185 (1920) (affirming Horning's conviction for violation of a statute prohibiting an individual from conducting business within the District without the necessary license where Horning maintained his pawnshop business headquarters in Virginia and managed his business so that no transaction took place within the District), abrogation on other grounds recognized in *United States v. Gaudin*, 515 U.S. 506, 520, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). *See generally Capital Constr. Co. v. Plaza West Coop. Ass'n*, 604 A.2d 428, 430 (D.C. 1992) (home improvement regulations enacted by the Council of the District of Columbia should be interpreted broadly to accomplish their remedial objectives) (internal citations omitted); *Truitt v. Miller*, 407 A.2d 1073, 1077–78 (D.C.1979) (home improvement regulations enacted by the Council of the District of Columbia "[were] designed to protect consumers against unscrupulous dealings by home improvement contractors.") (citing *Bathroom Design Inst. v. Parker*, 317 A.2d 526, 529 (1974)). Because petitioner entered into an agreement for home improvement services to be provided in the District, the ALJ did not err in concluding that he was obligated to obtain a license from the District prior to engaging in any home improvement sales.[2]

*Affirmed.*

---

**2.** Petitioner argues that his agreement with Nolan constituted a "sham" contract and not an "actual agreement." Even assuming he is not estopped from making this argument, it is unsupported by the record. *See Williams v. Amann*, 33 A.2d 633, 635 (1943) ("a long delay, silence, or acquiescence" after discovery of fraud signifies that "ratification and acceptance [of the contract] must be presumed" because a party that "received benefits as a result of the contract ... [is] estopped to reject the burdens.") (quoting *Guardian Trust Co. v. Meyer*, 19 F.2d 186, 193 (8th Cir.1927)). Petitioner performed at least some of the services detailed in the agreement and received compensation for those services.